[No. C052260. Third Dist. July 13, 2007.]

BLUE CROSS OF CALIFORNIA, Plaintiff and Appellant, v.
STATE DEPARTMENT OF HEALTH CARE SERVICES, Defendant and
Respondent;
MOLINA HEALTHCARE OF CALIFORNIA, Real Party in Interest and
Respondent.

**COUNSEL**

Orrick, Herrington & Sutcliffe, Cynthia J. Larsen and Michael C. Weed for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, Julie Weng-Gutierrez, Paul Reynaga, Margarita Altamirano and Barbara Haukedalen, Deputy Attorneys General, for Defendant and Respondent.

Rogers Joseph O'Donnell & Phillips, Rogers Joseph O'Donnell, Neil H. O'Donnell and Thomas D. Blanford for Real Party in Interest and Respondent.

**OPINION**

**BLEASE, Acting P. J.**—Plaintiff Blue Cross of California (Blue Cross) appeals from a judgment denying a petition for writ of mandate (Code Civ. Proc., § 1085) to set aside the decision of a hearing officer of the defendant State Department of Health Care Services (DHS or Department) that granted the appeal of real party in interest Molina Healthcare of California (Molina

Healthcare) and set aside the Department's notices of intent to award managed care contracts to Blue Cross for Riverside and San Bernardino Counties.

Plaintiff Blue Cross and real party in interest Molina Healthcare submitted competing bids to the Department to provide managed health care services to the members of California's Medi-Cal program residing in Riverside and San Bernardino Counties.

The bid process was initiated by the issuance of a request for proposal (RFP), soliciting bids for contracts to manage the medical care of Medi-Cal members in each county and establishing conditions for the bid. The RFP required a separate bid proposal for each county that contained a list of providers who had contracted with the bidder to render medical services to members residing in the county. The RFP is administered by the DHS Office of Medi-Cal Procurement (OMCP), which is authorized to reject a nonresponsive proposal. The bids are scored by evaluators within the Department.

Molina Healthcare was the existing contractor for Riverside and San Bernardino Counties and submitted identical lists of providers with each proposal, consisting of the combined lists of providers located in both counties. The OMCP rejected the bids as nonresponsive on the ground the RFP required a separate provider network for each county. DHS issued notices of intent to award the contracts to Blue Cross. Before the rejection, evaluators for the Department gave Molina Healthcare the highest technical scores for both counties.

Molina Healthcare appealed the DHS action to a Department hearing officer, who ruled that the RFP did not preclude the submission of identical, dual-county provider networks and that OMCP was incorrect in finding Molina Healthcare's submissions nonresponsive for that reason. The hearing officer set aside the notices of intent to award the contracts to Blue Cross and directed that DHS rescore the Blue Cross and Molina Healthcare proposals based on the original provider lists. The trial court affirmed the decision of the hearing officer and Blue Cross appealed the judgment.[1]

Blue Cross argues that it is the OMCP decision we should review and that we should sustain its resolution of any ambiguities in the RFP and conflicts in the evidence. From this vantage point Blue Cross argues the OMCP's reading of the RFP was correct and that Molina Healthcare's submissions accordingly were nonresponsive.

---

[1] On July 31, 2006, Blue Cross filed a petition for writ of supersedeas in this court seeking a stay of the hearing officer's decision, noting that "DHS recently completed that rescoring and, reversing itself, issued Notices of Intent to Award the two contracts to Molina." We denied the petition on August 24, 2006.

Blue Cross has misunderstood our scope of review of the hearing officer's decision. The hearing officer is vested with the Department's authority to construe the RFP and to determine whether the OMCP failed to apply it correctly. For this reason it is the decision of the hearing officer we review.

The dispositive issue is the construction of the RFP. We shall conclude the hearing officer correctly found "there is neither an express nor an implied prohibition" in the RFP for listing providers that serve more than one county and that it was appropriate to order rescoring the proposals on the basis of the original submissions.

We shall affirm the judgment of the superior court.

### FACTS AND PROCEDURAL BACKGROUND

The director of the Department is mandated to enter into contracts with managed care plans for the provision of services to persons eligible to receive medical benefits pursuant to publicly supported programs. (Welf. & Inst. Code, § 14093.05.) Managed care is the predominate delivery program for the majority of Medi-Cal members in California. "To implement and maintain the [managed care] contract, DHS expects the Contractor to develop and maintain a network of health care providers capable of providing the full scope of Medi-Cal Managed Care benefits." "Primary Care Physicians provide the majority of personal health care and are responsible for initiating and coordinating referrals for necessary specialty and ancillary care."

The bid process for the managed care contract is initiated by the issuance of an RFP, specifying the conditions under which a bid proposal is to be prepared. By notice dated March 30, 2004, DHS, through the OMCP, issued RFP No. 03-75736 requesting a proposal "to provide managed health care services to the beneficiaries of the State's Medi-Cal program in Alameda, Contra Costa, Los Angeles, Riverside, San Bernardino, San Francisco, and/or Santa Clara Counties . . . ."

The RFP authorized a bidder to compete for more than one county but required that a separate proposal be submitted for each county that included all of the technical proposal requirement (TPR) categories. The categories of concern on appeal are TPR 6, that directed a bidder to submit "a list of Primary Care Physicians [by subspecialty[2]] who will provide covered primary care services to Medi-Cal members," and TPR 9, that directed the bidder to "describe its current accessibility standards [for] appointments" for various kinds of care, including routine and urgent care.

---

[2] The subspecialties are family practice, general practice, internal medicine, pediatrics and OB/GYN (if applicable).

The Department received proposals for Riverside and San Bernardino Counties from four bidders, including Molina Healthcare and Blue Cross. At the time of submission of its proposals for Riverside and San Bernardino Counties, and for eight years prior thereto, Molina Healthcare held the Medi-Cal contracts for the two counties. It claims the provider networks submitted in response to the current RFP "are the approved networks Molina has in place to satisfy the identical contract requirements in the existing Riverside and San Bernardino Contract."

For this reason Molina Healthcare provided two identical lists of providers, one for Riverside County and one for San Bernardino County. Blue Cross does not dispute these facts. The OMCP rejected Molina Healthcare's proposals as nonresponsive because networks serving more than one county are prohibited by the RFP.

The RFP provides that a "contract[], if awarded, will be to the responsive and responsible Proposer in each county, who earns the highest total score." A score is arrived at by means of evaluation committees consisting of an evaluation scoring committee (ESC), a rating review committee (RRC) and the executive review committee (ERC).

The evaluators who examined the Molina Healthcare provider networks gave Molina Healthcare the highest scores for both Riverside County and San Bernardino County. Most of them appeared to understand "that Molina had submitted a 'combined network,' or had at least successfully evaluated county-specific information . . . ."[3] The hearing officer observed that "Molina's Riverside and San Bernardino Category 6 provider network proposals show why the evaluators were able to identify the extent of service to each county even though it chose to submit a combined network. First, the submissions include and are augmented by a detailed narrative, which is not prohibited by the RFP." "Second, the individual RFP Category 6 responses contain a wealth of information on critical subjects differentiating the application of the combined network to the two counties."[4]

---

[3] For example, the category 6 findings show: "Evaluators K, N, and U all credit Molina with 100 compliance with the 30-minute, 10 mile standard." "Evaluator M states that, although the maps combine the networks, the chart separates the access standards by county, verified by this evaluator." "[A] chart demonstrates how Molina meets the standards of 100 percent of Medi-Cal beneficiaries within 30 minutes or 10 miles of the [Primary Care Physician]'s office for both counties with separate beneficiary groups . . . ."

[4] On this point the hearing officer states: "In addition to the GeoAccess maps and analysis reports, a chart demonstrates how Molina meets the standards of 100 percent of Medi-Cal beneficiaries within 30 minutes or 10 miles of the [Primary Care Physician] office for both counties with separate beneficiary groups . . . ."

The GeoAccess maps are contained in two volumes, one for each county, of the appendix in support of real party in interest and respondent's opposition brief. The charts show the

However, the OMCP concluded that Molina Healthcare's dual-county submissions did not comply with the RFP requirement that a separate provider network be identified for each county. By letter dated May 10, 2005, the OMCP notified Molina Healthcare of its disqualification. It said: "In Molina's original submission, lists representing six specific provider network types were. identical for both counties signifying a combined network for each provider type. The RFP required for each provider type that a separate network be identified for San Bernardino County and that another separate network be identified for Riverside County. Molina Healthcare's submissions for Riverside County and San Bernardino County did not comply with this RFP requirement and were therefore, non-responsive." Further, "[b]efore the non-responsive finding, the ESC had given Molina the highest technical scores for both Riverside County and San Bernardino County." DHS did not discover the defect in the submissions until scoring was almost complete. Accordingly, the OMCP concluded that "the scores achieved for Molina's provider networks are invalid as the scores were based upon an improper submission of a combined two county provider network . . . ."

A disappointed bidder may take an administrative appeal pursuant to the procedures of the RFP, if it has "submit[ted] a timely proposal that complies with the RFP instructions . . . ." An appeal is heard by a hearing officer and "[t]he decision of the Hearing Officer shall be final and there will be no further administrative appeal." (RFP § K4c.5.)

Molina Healthcare took a timely appeal. The hearing officer concluded there was no ambiguity in the RFP. He said: "[T]here is neither an express nor an implied prohibition" for listing providers that serve more than one county. According to the hearing officer, the DHS must then show "that Molina's proposal is conditional, is materially incomplete, or contains material defects, alterations or irregularities of some kind" but "has not actually shown defects, alterations, or irregularities of a type that could not be addressed through the scoring process."

Accordingly, the hearing officer ordered the DHS to set aside the notices of intent to award Blue Cross the contracts for Riverside and San Bernardino Counties and remanded the matter to the DHS "for the purpose of completely re-evaluating Blue Cross' and Molina's proposals for those Counties with respect to . . . (TPR Category) 6, Provider Network, and . . . (TPR Category)

accessibility of its providers to Medi-Cal members within each county, measured by the average distance and average time to a choice of providers. For example, the GeoAccess report for San Bernardino County contains a chart showing access to family practice, general practice and internal medicine providers, that displays the average distances to the providers of 1.8 to 2.7 miles and the average time to the providers of 2.5 to 3.8 minutes. Similar charts are provided for all of the medical specialties rendering service in each county, notwithstanding that the time and distance requirements only apply to primary care physicians.

9, Access and Availability, only." In so doing the hearing officer ordered that the "[]DHS shall treat the combined provider network lists, maps, and other supporting documentation, as submitted in Molina's original proposals, as documents for the proposal for each County, as if a 'Reference Set' has been submitted under the RFP."

Blue Cross filed a petition for writ of mandate in ordinary mandamus (Code Civ. Proc., § 1085) or in the alternative administrative mandamus (Code Civ. Proc., § 1094.5) in the superior court. The trial court affirmed the decision of the hearing officer.

## DISCUSSION

### I

#### Scope of Review

Blue Cross argues on appeal that the scope of our review is limited to a review of the OMCP's construction and application of the RFP. We disagree.

The RFP provides the procedure and the standards for review of a DHS decision by a Department hearing officer. Section O4c.2 provides that "[a]ppeals are limited to the grounds that DHS failed to correctly apply the standards for reviewing proposals in accordance with this RFP." Section O4c.5 specifies the appeal process. It provides in pertinent part:

"A Hearing Officer . . . shall review each timely and complete appeal and may resolve the appeal by either considering the contents of the written appeal letter or, at his/her discretion, by holding an oral appeal hearing. The Hearing Officer may request additional information or further clarification of an issue at his/her discretion. The oral appeal hearing will be an informal hearing in which the appellant makes an oral presentation describing the basis of its appeal, and the authority for the appeal, followed by questions if any, from the Hearing Officer. The awardee and the Office of Medi-Cal Procurement may also make an oral presentation followed by questions, if any, from the Hearing Officer."

"The decision of the Hearing Officer shall be final and there will be no further administrative appeal."

The DHS appointed a hearing officer to hear the Molina Healthcare appeal. The letter appointing the officer states, in pertinent part: "The Department of Health Services . . . hereby appoints you to act for the Department with respect to any and all matters within the powers, functions, duties, and

responsibilities of the Department regarding all appeals related to the Department's Request for Proposal 03-75736 . . . ." This vests the hearing officer with the authority of the Department to determine whether "DHS failed to correctly apply the standards for reviewing proposals in accordance with the RFP."

The judicial review of the decision of the hearing officer is by ordinary mandamus because the administrative procedure does not meet the standards for administrative mandamus for the reason the hearing officer's decision is *not* "the result of a proceeding in which by law a hearing is required to be given . . . ." (Code Civ. Proc., § 1094.5, subd. (a).)

RFP section O4c.5 does not require a hearing, any hearing that is held is "informal," and the appellant then is given only the right to make an oral presentation. In this case the hearing officer decided the case without a hearing. Accordingly, the appropriate proceeding is in ordinary mandamus. (See *Monterey Mechanical Co. v. Sacramento Regional County Sanitation Dist.* (1996) 44 Cal.App.4th 1391, 1399 [52 Cal.Rptr.2d 395] ["The decision of the District to award the contract . . . did not result from a proceeding in which a hearing is required by law and evidence must be taken."].)

Code of Civil Procedure section 1085, subdivision (a) applies where the writ is to "compel the performance of an act which the law specially enjoins, as a duty resulting from an office . . . ." As Blue Cross recognizes, "[i]n an appeal of the denial of a writ of mandate in connection with the award of a public contract, the Court 'limit[s] [its] review to an examination of the proceedings before the agency to determine whether its findings and actions are supported by substantial evidence.' (*MCM Const., Inc. v. City and County of San Francisco* (1998) 66 Cal.App.4th 359, 368 [78 Cal.Rptr.2d 44] . . . .)"

Blue Cross argues that the hearing officer interpreted the RFP as a contract "on the principle that any ambiguity in the RFP must be interpreted against DHS because it drafted the RFP." It claims that the RFP is an invitation for a proposal and not a contract and therefore that rule does not apply. It argues that it is the findings of the DHS that we review and that they should be gauged by whether there is substantial evidence to support them.

However, implicit in the argument is that the decision of the hearing officer is not the decision of the Department, contrary to the hearing officer's appointment "to act for the Department on the appeal" and contrary to the grant of authority to determine whether the Department "correctly appl[ied] the standards for reviewing proposals in accordance with this RFP." To "correctly apply" the RFP requires that the hearing officer interpret the RFP.

In so doing in this case the hearing officer said he applied the scope of review applicable to a trial court. "In reviewing the award of a public

contract, our function is the same as the trial court's—to decide whether the public entity's decision is supported by substantial evidence," quoting *Ghilotti Construction Co. v. City of Richmond* (1996) 45 Cal.App.4th 897, 903 [53 Cal.Rptr.2d 389].

In this case there is no question of substantial evidence since there is no fact of consequence to which the substantial evidence rule could apply. The only material fact is Molina Healthcare's submission of identical, dual-county, provider networks that serve both Riverside and San Bernardino Counties and there is no dispute as to this fact.

■ Accordingly, our task on appeal is to rule on the dispositive issue, whether the hearing officer's interpretation of the RFP is within the agency's discretion to interpret its own RFP and whether the hearing officer correctly applied the interpretation to the undisputed facts. Since the hearing officer acts for the agency, and his or her determination is final, we apply the rule that public agencies are entitled to significant deference when making interpretations that are within their particular expertise. (See *Jim Beam Brands Co. v. Franchise Tax Bd.* (2005) 133 Cal.App.4th 514, 521 [34 Cal.Rptr.3d 874].)

Since the OMCP findings of nonresponsiveness are wholly predicated upon the view the RFP prohibits dual-county provider networks, that is the issue we resolve.

II

There Is No Prohibition on Multicounty Providers

A.

Blue Cross's principal argument is that "Molina's two-county combined provider networks were non-responsive because they were not county-specific." Blue Cross does not claim the RFP prohibits out-of-county providers since the Blue Cross submissions also contain them.

Accordingly, it is the application of the same provider network to both Riverside and San Bernardino Counties that Blue Cross views as beyond the provisions of the RFP. And that is the only basis upon which Blue Cross could sustain the OMCP findings that the submissions were not responsive to the RFP.

In its reply brief, Blue Cross reduces the argument even further. It is not the cross-county nature of the Molina Healthcare submissions about which

Blue Cross complains but that it is responsible for confusing the OMCP about the nature of its submissions and therefore should be charged with nonresponsiveness based on the resulting confusion. Blue Cross states: "[A]ll Molina had to do in response to [the OMCP's requests for clarification] was to explain to DHS that all of its providers in both counties were intended to be in both individual county networks and that, therefore, its 'combined' provider networks were county-specific."

This misdirects attention from the fact the OMCP ultimately was not confused about the dual-county nature of Molina Healthcare's submissions and, indeed, could not have been since each dual-county submission was contained in each proposal. Rather, the OMCP simply construed the RFP to prohibit dual-county provider networks and clearly stated so in rejecting Molina Healthcare's submissions as nonresponsive. "The RFP required for each provider type that a separate network be identified for San Bernardino County and that another separate network be identified for Riverside County."

### B.

Blue Cross admits there is no specific prohibition of dual-county submissions in the RFP. Rather, it would imply one from two shards of evidence it exhumes from the RFP.

First, it argues that "the RFP defined the 'Service Area' for each county contract involved in the procurement by zip codes within each county, excluding those zip codes in each respective county that were not to be considered part of the 'Service Area.' " This confuses the area to be served with the location of the providers who serve the area. The zip code provision is designed only to show that not all of a county is to be served.

The RFP provides that "Contractor shall maintain a network of Primary Care Physicians which are located within thirty (30) minutes or ten (10) miles of a Member's residence unless the Contractor has a DHS approved alternative time and distance standard."[5] This says that the provider network of primary care physicians shall be county specific only in the sense that it can provide the required services to the Medi-Cal members residing in the county.

Second, Blue Cross argues, "[c]onsistent with the definition of the Service Area, the RFP expressly required proposers to demonstrate in several ways that its network of providers was adequate for the particular Service Area. For instance, the RFP required that proposers demonstrate compliance with the

---

[5] This distance requirement apparently does not apply to medical specialties other than the subspecialties contained within the term "primary care physician." (See fn. 2, *ante.*)

time and distance standard for [Primary Care Physician] of having a [Primary Care Physician] within 10 miles or 30 minutes of every member in the service area."

However, Molina Healthcare did just that. As noted, the two volumes of the appendix in support of real party in interest and respondent's opposition brief, one volume for each county, chart the average time and distances for both the primary care physician and every specialty required to be within the provider network. (See fn. 4, *ante*.) Blue Cross makes no claim that there was any deficiency in this showing.

As noted, the hearing officer found no provision of the RFP that prohibited the submission of the same provider network for more than one county. "With the exception of the 'Reference Set' format requirement [that each proposal be submitted separately], a review of the RFP, exhibits and appendices reveals no express provision addressing the treatment of identical responses, let alone a prohibition against submitting identical responses, whether those responses are the same provider network list for different counties, or any other factor."

The critical question is whether DHS was able to determine whether Molina Healthcare met the RFP mileage and time requirements for service to members within a county. It is obvious that in large areas, such as San Bernardino or Riverside Counties, not every provider, even those located within the county, could service all of the Medi-Cal members in the county within the time and distance constraints of the RFP. Thus, it is the location of the member and not the physician's location that is county specific.

■ The hearing officer found the dual-county networks could meet the requirements of the RFP. "Molina's Riverside and San Bernardino Category 6 provider network proposals show why the evaluators were able to identify the extent of service to each county even though it chose to submit a combined network. First, the submissions include and are augmented by a detailed narrative, which is not prohibited by the RFP. . . . Initially, the narrative addresses Molina's history as a [DHS] contractor for Riverside and San Bernardino Counties for eight years prior to the RFP, and its knowledge of the network interdependency that exists between the counties." Accordingly, as the hearing officer found from the record: "Evaluators K, N, and U all credit Molina with 100% compliance with the 30-minute, 10-mile standard."

For these reasons we shall affirm the judgment of the trial court.

## DISPOSITION

The judgment is affirmed. Molina Healthcare shall recover its costs on appeal. (Cal. Rules of Court, rule 8.276.)

Davis, J., and Raye, J., concurred.