[No. B213322. Second Dist., Div. One. Feb. 5, 2010.]

GRAFFITI PROTECTIVE COATINGS, INC., et al., Plaintiffs and Appellants, v.
CITY OF PICO RIVERA, Defendant and Respondent.

1210

**COUNSEL**

Rehwald Glasner & Chaleff and William Rehwald for Plaintiffs and Appellants.

Alvarez-Glasman & Colvin and Richard H. Lam for Defendant and Respondent.

## OPINION

**MALLANO, P. J.**—Through competitive bidding, plaintiff was awarded a municipal contract to maintain a city's bus stops. Four years later, the city terminated the contract as permitted. Without inviting competitive bids, the city entered into a new contract with one of plaintiff's competitors. Plaintiff filed this action, seeking a writ of mandate and declaratory relief to invalidate the new contract and to compel the city to award the contract through competitive bidding.

In response, the city filed a special motion to strike, contending that the action was a "strategic lawsuit against public participation" (SLAPP) (Code Civ. Proc., § 425.16, subd. (b)(1); all further statutory references are to that code unless otherwise indicated). The trial court granted the motion, reasoning that the maintenance of the city's bus stops was an issue of public interest and plaintiff was not likely to prevail on the merits of its claims. Under the anti-SLAPP statute, the city was entitled to an award of attorney fees, which the trial court fixed at over $24,000. (See § 425.16, subd. (c).)

We conclude that, even if plaintiff's claims involve a public issue, they are not based on any statement, writing, or conduct by the city in furtherance of its right of free speech or its right to petition the government for the redress of grievances. Rather, plaintiff's claims are based on state and municipal laws requiring the city to award certain contracts through competitive bidding. Thus, the claims are not subject to the anti-SLAPP statute. It follows that plaintiff does not have to demonstrate a probability of prevailing on the merits at the pleading stage, risking the dismissal of its claims and the payment of the city's attorney fees. Were we to conclude otherwise, the anti-SLAPP statute would discourage attempts to compel public entities to comply with the law. Accordingly, we reverse.

## I

## BACKGROUND

The allegations and evidence in this case are taken from the pleadings and the papers submitted in the trial court with respect to the anti-SLAPP motion.

### A. *Complaint*

The complaint alleged as follows. Steven Lenhoff founded Graffiti Protective Coatings, Inc. (GPC), and developed a confidential and proprietary method for providing high quality cleaning of bus stops at low cost. The City of Pico Rivera (City) learned about GPC's reputation through the company's work in other cities.

In July 2003, GPC submitted a bid to perform the maintenance work on the City's bus stops. The proposed contract concerned the performance of a public works project that exceeded $5,000 per year. Under Public Contract Code sections 20161 and 20162, the contract had to be awarded to the lowest responsible bidder. The City used its own informal bidding process, which, whenever possible, had to be based on at least three bids. (See Pico Rivera Mun. Code, § 3.48.040.) GPC was awarded the contract on July 21, 2003.

The term of the contract was one year, to be automatically extended for four additional years, one year at a time, unless either party notified the other of its intent not to extend the contract at least 30 days before the renewal term.

In April 2007, three months before the contract came due for its last extension, Carlos Velasquez, a GPC employee, was approached by one of GPC's competitors, Nationwide Environmental Services (NES), a division of Joe's Sweeping, Inc. NES told Velasquez it would be receiving the City's bus stop maintenance contract and wanted to hire him when it began work on the bus stops. Telephone numbers were exchanged. NES kept Velasquez informed of its efforts to get the GPC contract "terminated."

In May 2007, GPC received a notice of nonrenewal from the City. GPC contacted the City's director of public works and was told that GPC was the best contractor for bus stop maintenance, GPC should disregard the nonrenewal notice, and the City would not be inviting any new bids.

Over the following weeks, GPC called the director of public works several times to check on the status of the contract extension. The director said he was waiting to hear from the city manager.

On July 18, 2007, GPC called the director and was informed that the City planned to perform the bus stop maintenance "in house." On July 20, 2007, the director notified GPC that its contract would not be renewed for the remaining year. Shortly thereafter, GPC learned that the bus stop contract had been given to NES and that no bidding process had been used.

On July 22, 2007, Velasquez told GPC that NES had offered him a job performing the same services he was performing for GPC. Velasquez had access to GPC's "trade secret" method for maintaining bus stops and, like other GPC employees, had signed a confidentiality agreement in that regard. NES wanted the specifics of GPC's maintenance program and sought to obtain them by hiring Velasquez at an inflated salary. Velasquez commenced employment with NES on July 23, 2007. The next day, NES began work on the City's bus stops.

On April 24, 2008, GPC and its founder, Lenhoff (collectively GPC), brought this action against NES, Velasquez, and the City. GPC alleged five claims against NES and Velasquez: trade libel, slander, misappropriation of trade secrets, unfair competition, and unjust enrichment. NES was named as the only defendant on a claim for intentional interference with prospective economic advantage. Against the City, GPC alleged a claim entitled "petition for writ of mandate." That claim, based on the Public Contract Code and the City's municipal code, sought to compel the City to award the bus stop maintenance contract through competitive bidding. GPC alleged a separate claim against NES and the City for declaratory relief, requesting that the contract between NES and the City be declared void. Finally, GPC alleged that the City had breached the bus stop maintenance contract by terminating it.

### B. Anti-SLAPP Motion

On June 5, 2008, the City filed a special motion to strike (§ 425.16, subd. (b)(1)), contending that (1) the claims against it were based on its communications with GPC, Velasquez, NES, and the public regarding the maintenance of the City's bus stops and (2) GPC was not likely to prevail on the merits of its claims. As evidence, the City offered a copy of the bus stop maintenance contract with GPC.

GPC filed an opposition, arguing that the claims were not based on the City's right of petition or free speech and that GPC was likely to prevail on its claims. Lenhoff submitted a declaration tracking the allegations of the complaint. Attached to the declaration was a document dated May 29, 2003, entitled, "Contract Documents and Specifications for Project No. 9128, Bus Stop Maintenance Program in the City of Pico Rivera." The document, which consisted of 57 pages, began with a notice that the City was accepting sealed bids for the bus stop maintenance project and stated that the "Council will award the contract to the lowest responsible bidder." GPC also offered the City's May 22, 2007 notice of nonrenewal of its contract with GPC. The notice informed GPC that the City would no longer be bound by the parties' contract as of July 21, 2007, and stated that the City intended "to issue a new Request for Proposal for bus stop maintenance services." A "request for proposal" is a means of inviting bids for a contract. (See *Blue Cross of California v. State Dept. of Health Care Services* (2007) 153 Cal.App.4th 322, 324 [62 Cal.Rptr.3d 772].)

GPC filed a first amended complaint, deleting its claims for breach of contract (alleged against the City) and unjust enrichment (alleged against NES and Velasquez).

C.  *Trial Court's Ruling*

The anti-SLAPP motion was initially heard on August 1, 2008. After a preliminary discussion, the trial court continued the hearing. On August 22, 2008, the trial court heard additional argument and granted the motion, adopting the tentative ruling as its order.

The trial court concluded that GPC's claims against the City were based on " 'conduct in furtherance of the exercise of the constitutional right . . . [of] free speech in connection with a public issue or [an issue of] public interest.' [(§ 425.16, subd. (e)(4).)] [¶] The conduct here is the City's termination of a maintenance contract and the hiring of Defendant NES regarding such contract. [¶] The action of the City . . . involves a public interest which may include governmental activities and private activities such that it impacts a broad segment of society. . . . It is clear that the maintenance of bus stops and shelters is a public interest. Defendant City asserts that without maintenance the bus stops will be affected adversely with trash, smells, etc. This affects safety and may constitute a nuisance." The trial court also concluded that GPC was not likely to prevail on the merits of its claims.

On October 31, 2008, the trial court entered an order and a judgment granting the City's motion. Notices of entry of the order and the judgment, respectively, were served on November 7, 2008. GPC filed a motion for a new trial, which was denied as untimely. A notice of appeal followed on January 5, 2009.

For its part, the City filed a motion to recover attorney fees pursuant to the anti-SLAPP statute, which states in part: "[A] *prevailing defendant* on a special motion to strike shall be *entitled* to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is *frivolous or is solely intended to cause unnecessary delay*, the court shall award costs and reasonable attorney's fees to a *plaintiff prevailing* on the motion . . . ." (§ 425.16, subd. (c), italics added.) By order and judgment filed on January 27, 2009, the trial court awarded the City $24,442.50 in attorney fees.

## II

## DISCUSSION

Our review of an order granting or denying an anti-SLAPP motion is de novo. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

■ In deciding whether an action is a SLAPP, the trial court should distinguish between (1) speech or petitioning activity that is mere *evidence*

related to liability and (2) liability that is *based on* speech or petitioning activity. Prelitigation communications or prior litigation may provide evidentiary support for the complaint without being a basis of liability. An anti-SLAPP motion should be granted if liability is based on speech or petitioning activity itself.

Here, the prelitigation communications between the City and others are helpful in establishing the events leading up to the termination of GPC's contract. The communications assist in telling the story. But GPC's claims against the City are not based on those communications. Rather, liability is premised on state and municipal laws requiring the City to award certain contracts through competitive bidding. A petition for a writ of mandate and a request for declaratory relief, as set forth in the complaint, are appropriate means to determine whether the City complied with those laws. To conclude that GPC's claims are subject to the anti-SLAPP statute would require GPC to demonstrate a probability of prevailing on the merits at the pleading stage, a result that would discourage attempts to compel public entities to act lawfully.

## A.   *Protected Activity*

■ " 'Litigation which has come to be known as SLAPP is defined by the sociologists who coined the term as "civil lawsuits . . . that are aimed at preventing citizens from exercising their political rights or punishing those who have done so." . . . [¶] . . . [¶]

" 'SLAPP suits are brought to obtain an *economic* advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. . . . [O]ne of the common characteristics of a SLAPP suit is its lack of merit. . . . But lack of merit is not of concern to the plaintiff because the plaintiff does not expect to succeed in the lawsuit, only to tie up the defendant's resources for a sufficient length of time to accomplish plaintiff's underlying objective. . . . As long as the defendant is forced to devote its time, energy and financial resources to combating the lawsuit its ability to combat the plaintiff in the political arena is substantially diminished.' " (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 890–891 [17 Cal.Rptr.3d 497], citations omitted.)

■ " 'The Legislature enacted the . . . statute to protect defendants . . . from interference with the valid exercise of their constitutional rights, particularly the right of freedom of speech and the right to petition the government for the redress of grievances.' " (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1052 [61 Cal.Rptr.3d 434].)

■ The anti-SLAPP statute provides that "[a] cause of action against a person *arising from any act* of that person *in furtherance of* the person's right of *petition* or *free speech* under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1), italics added.) The statute is to "be broadly construed to encourage continued participation in free speech and petition activities." (*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 22 [45 Cal.Rptr.3d 633]; accord, § 425.16, subd. (a).)

■ "[T]he statutory phrase 'cause of action . . . *arising from*' means simply that the *defendant's act* underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. . . . In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. . . . 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695], first italics added, citations omitted; accord, *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734 [3 Cal.Rptr.3d 636, 74 P.3d 737] ["arising from" encompasses any act "based on" speech or petitioning activity]; *Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 [87 Cal.Rptr.3d 275, 198 P.3d 66] [same]; *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 72 [24 Cal.Rptr.3d 72] [same].)

"As used in [section 425.16], '*act in furtherance of* a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral *statement or writing* made in connection with *an issue under consideration or review by* a legislative, executive, or judicial body, or *any other official proceeding authorized by law*; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other *conduct in furtherance of* the exercise of the constitutional *right of petition* or the constitutional *right of free speech* in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e), italics added; see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117–1118, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

■ "Clauses (3) and (4) of section 425.16, subdivision (e), concerning statements made in public fora and 'other conduct' implicating speech or petition rights, include an express 'issue of public interest' limitation; clauses (1) and (2), concerning statements made before or in connection with issues under review by official proceedings, contain no such limitation." (*Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1117.) Thus, if a communication falls within either of the "official proceeding" clauses, the anti-SLAPP statute applies without a separate showing that a public issue or an issue of public interest is present. (See *id.* at pp. 1117–1121, 1123; *Moore v. Shaw* (2004) 116 Cal.App.4th 182, 196 [10 Cal.Rptr.3d 154].) In drafting the statute, the Legislature concluded that authorized official proceedings necessarily involve a public issue or an issue of public interest. (*Briggs*, at p. 1117.)

■ In ruling on an anti-SLAPP motion, the trial court "engage[s] in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

Put another way, "[t]he party making a special motion to strike must make a prima facie showing that the plaintiff's cause of action arises from the defendant's free speech or petition activity. . . . Once the defendant makes a prima facie showing, 'the burden shifts to the plaintiff to . . . "make a prima facie showing of *facts* which would, if proved at trial, support a judgment in plaintiff's favor." ' " (*Rezec v. Sony Pictures Entertainment, Inc.* (2004) 116 Cal.App.4th 135, 139 [10 Cal.Rptr.3d 333], citations omitted; accord, *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315–316 [86 Cal.Rptr.3d 288, 196 P.3d 1094]; *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 108 [64 Cal.Rptr.3d 467].)

■ "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the

anti-SLAPP statute. . . . [T]hat a cause of action arguably may have been 'triggered' by protected activity does not [mean] that it is one arising from such." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].) " ' "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." . . .' " (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1478 [74 Cal.Rptr.3d 1], citation omitted; accord, *Navellier*, at pp. 91–93.) "Nothing in the statute itself categorically excludes any particular type of action from its operation . . . ." (*Navellier*, at p. 92.)

## B. *The City's Petition and Free Speech Rights*

In attempting to satisfy the first step of the anti-SLAPP analysis, the City argues that GPC's claims are based on either (1) a "written or oral *statement or writing* made in connection with *an issue under consideration or review by* a legislative, executive, or judicial body, or *any other official proceeding authorized by law*" or (2) "conduct *in furtherance of* the exercise of the constitutional *right of petition* or the constitutional *right of free speech* in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(2), (4), italics added.) We disagree.

Assuming that the City's decision to terminate the maintenance contract with GPC and to enter into a new contract with NES was considered or reviewed in an official proceeding, GPC's claims are not based on a "*statement or writing* made [by the City] in connection with [its selection of a new contractor]." (§ 425.16, subd. (e)(2), italics added.) Nor are the claims based on any conduct *in furtherance of* the City's right of petition or free speech. (See § 425.16, subd. (e)(4).) Rather, GPC's claims are based on state and municipal laws requiring competitive bidding. GPC does not contend that any statement or writing by the City is actionable. And the City's conduct— entering into a contract with NES absent bidding—was not undertaken in furtherance of the City's right of petition or free speech.

In analogous circumstances, courts have concluded that the defendant failed to show that the claims were based on speech or petitioning activity. In *City of Cotati v. Cashman*, *supra*, 29 Cal.4th 69, the owners of mobilehome parks filed an action against the City of Cotati in federal court, contending that a municipal rent control ordinance constituted a regulatory taking. The city then filed suit against the owners in state court, seeking declaratory relief that the same ordinance was valid. The owners responded to the state suit

with an anti-SLAPP motion, arguing that the city's suit was based on protected activity, namely, the filing of the owners' federal action. The trial court granted the motion, and the Court of Appeal reversed. The Supreme Court held that the city's suit was not a SLAPP because the controversy giving rise to *both* lawsuits was the disputed validity of the city's ordinance. The city's suit was based on that issue, not on the owners' federal action. (See *id.* at p. 80; accord, *City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582, 1590–1592 [66 Cal.Rptr.3d 862] [city's declaratory relief action was based on validity of local ballot initiative, not on petitioning activities of initiative's proponents such as gathering signatures and submitting initiative for ballot].)

In *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343 [22 Cal.Rptr.3d 724] (*San Ramon*), a public employer filed a writ petition against a county retirement board (see §§ 1085, 1094.5), alleging that the board had imposed an excessive contribution rate on the employer in violation of the County Employees Retirement Law of 1937 (Gov. Code, §§ 31450–31898). The board filed a special motion to strike (§ 425.16, subd. (b)(1)), contending that the petition was based on its conduct in deciding how much the employer had to pay. The trial court denied the motion.

The Court of Appeal affirmed, stating: "[T]here is nothing about [the Board's] decision, qua governmental action, that implicates the exercise of free speech or petition. The Board's resolution was simply to impose a requirement that the [employer] pay a contribution to the [retirement association] of nearly $2.3 million for proposed enhanced retirement benefits to . . . employees. . . . [W]hile the [employer's] petition arises out of the Board's adoption of the $2.3 million contribution rate, the *substance* of the Board's action does not constitute the exercise of the Board's right of speech or petition." (*San Ramon, supra,* 125 Cal.App.4th at p. 355.) "[T]he Board was not sued based on the content of speech it has promulgated or supported, nor on its exercise of a right to petition. The action challenged consists of charging the [employer] more for certain pension contributions than the [employer] believes is appropriate. This is not governmental action which is speech-related." (*Id.* at p. 357.) "Even if the conduct of individual public officials in discussing and voting on a public entity's action or decision could constitute an exercise of rights protected under the anti-SLAPP statute[,] . . . this does not mean . . . litigation challenging a public entity's action or decision always arises from protected activity." (*Id.* at pp. 346–347.)

The *San Ramon* court also emphasized the practical consequences of concluding that the anti-SLAPP statute applied, noting that if a special motion

to strike could be brought in every case where a petition for mandate seeks to challenge a government decision, then suits to compel public entities to comply with the law would be chilled. (See *San Ramon, supra,* 125 Cal.App.4th at pp. 357–358 & fn. 9.)

*San Ramon* was distinguished in *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387 [53 Cal.Rptr.3d 647]. In *Vergos,* a state university employee pursued an internal grievance against his supervisor for sexual harassment. In an administrative proceeding authorized by the Regents of the University of California, the hearing officer denied the grievance. The employee then filed a civil rights suit against the hearing officer, alleging that her decision had failed to protect him from future harassment. (*Id.* at pp. 1390–1392, 1396–1397.) The hearing officer filed a special motion to strike, contending that her communications were made in connection with an issue under consideration in an official proceeding. (See § 425.16, subd. (e)(2).) The trial court denied the motion. The Court of Appeal reversed because "[t]he gravamen of plaintiff's [claim] is [the hearing officer's] communicative conduct in denying plaintiff's grievances. The hearing, processing, and deciding of the grievances (as alleged in the complaint) are meaningless without a communication of the adverse results." (146 Cal.App.4th at p. 1397.) Thus, *Vergos* recognized that the anti-SLAPP statute applies where liability is based on protected speech. (See *id.* at pp. 1397–1399 [discussing *San Ramon*].)

Several courts have addressed the distinction between (1) speech or petitioning activity that serves solely as evidence in proving liability—which is not subject to the anti-SLAPP statute—and (2) speech or petitioning activity that *is* the basis of liability—to which the anti-SLAPP statute applies.

In *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624 [7 Cal.Rptr.3d 715] (*Jespersen*), the plaintiffs sued their former attorneys for malpractice, alleging that the attorneys had negligently defended them in an earlier civil action, resulting in an order striking their answer and entering their default. In response to the malpractice suit, the attorneys filed an anti-SLAPP motion, which was denied. The Court of Appeal affirmed, explaining: "[Plaintiffs'] malpractice action is not based upon [the attorneys'] having filed an answer or cross-complaint in the action in which [the attorneys] represented [plaintiffs]. It is not . . . based upon [the attorneys'] having filed declarations, motions, or other papers in that action, or upon [their] appearance on discovery or other motions." (*Id.* at p. 630.) "[The attorneys'] conduct allegedly consisted of: (1) a *failure* to serve timely discovery responses . . . ; (2) a *failure* to comply with a court order to serve responses without objections; and (3) a *failure* to comply with a second court

order. . . . [I]t appears that the alleged attorney malpractice did not consist of any act in furtherance of anyone's right of petition or free speech, but [of the attorneys'] negligent *failure* to do so on behalf of their clients." (*Id.* at p. 631.)

*Jespersen* commented on the use of litigation-related activity as evidence of liability: "[The attorneys] contend[] that the *evidence* of [their] conduct, a declaration . . . filed in the underlying action, is the protected free speech or petition from which [plaintiffs'] cause of action arises. Although [this] logic escapes us, it is apparently based upon the fact that such evidence was a written statement filed in a judicial proceeding. (See § 425.16, subd. (e).) The declaration was filed in support of a motion submitted by [the attorneys] on behalf of [plaintiffs] pursuant to section 473 to set aside the default. In it, [one of the attorneys] essentially admitted that she continued to apply her own interpretation to the discovery request, although it was at odds with opposing counsel's and the court's, and that in order to protect her clients' privacy, she continued to refuse to produce certain financial documents. . . . [S]he admitted having effectively interposed an objection (privacy) in direct conflict with the court's order.

"[Plaintiffs'] cause of action is not based on [the attorney's] declaration or any of [the other attorneys'] declarations. [The attorneys] have not been sued for having negligently filed declarations admitting their malpractice, but for their failure to comply with a discovery statute and two court orders to do so. [The attorneys] have failed to demonstrate that such conduct amounts to constitutionally protected speech or petition, and we reject their attempt to turn garden-variety attorney malpractice into a constitutional right." (*Jespersen, supra,* 114 Cal.App.4th at pp. 631–632, fn. omitted; accord, *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1182–1183, 1186–1189 [20 Cal.Rptr.3d 621] [clients' suit against attorneys was based on duty of loyalty, not on statements made by attorneys in arbitration proceeding]; *id.* at p. 1189 ["Evidence that confidential information was actually used against the former client in litigation would help support damages, but is not the basis for the claim."].)

In *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388 [126 Cal.Rptr.2d 560], the plaintiff sued State Farm for claims handling misconduct in violation of the unfair competition law (Bus. & Prof. Code, §§ 17200–17210). The complaint included references to an investigation conducted by California's Department of Insurance (DOI) in which the DOI found that State Farm had mishandled nearly 50 percent of the 825 claim files investigated. State Farm responded with a special motion to strike (§ 425.16, subd. (b)(1)), contending that the suit interfered with its

ability to respond to an official proceeding and its right to communicate freely with a regulatory agency conducting an official inquiry. The trial court granted the motion. The Court of Appeal reversed on the ground that the complaint alleged "State Farm engaged in certain claims handling misconduct and violated a number of statutory and regulatory rules. [Plaintiff] seeks . . . to call State Farm to task for *that conduct*. [He] seeks no recovery from State Farm for State Farm's activity in *communicating information* to DOI, nor does he allege that any such communication was wrongful or the cause of any injury to him. The allegations that State Farm engaged in claims handling misconduct do not charge an act that State Farm could or would argue was done by it 'in furtherance of' its petition or free speech rights.

"We thus conclude that the alleged wrongful acts of State Farm were not done in furtherance of any claimed right of petition or free speech. Indeed, State Farm does not really claim otherwise. It argues instead that plaintiff is alleging that State Farm's communications to DOI (which allegedly contain or constitute *evidence* of such wrongdoing) were protected communications, and to allow plaintiff to rely on them to prosecute this action would effectively interfere with State Farm's right to freely communicate with its regulatory agency. We reject this argument out of hand. This contention confuses State Farm's allegedly *wrongful acts* with the *evidence* that plaintiff will need to prove such misconduct. Plaintiff seeks no relief from State Farm for its communicative acts, but rather for its alleged mistreatment of policyholders and its related violations and evasions of statutory and regulatory mandates." (*Gallimore v. State Farm Fire & Casualty Ins. Co., supra,* 102 Cal.App.4th at p. 1399; accord, *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1317–1319 & fns. 11, 14 [135 Cal.Rptr.2d 903] [suit by rent control board against landlord was based on restrictions in rent control law, not on documents landlord filed with board to obtain rent increase]; *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1287–1288 [65 Cal.Rptr.3d 469] [suit by department of fair employment and housing against landlord was based on antidiscrimination law, not on landlord's earlier suit to evict disabled tenant]; *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 416–418 [9 Cal.Rptr.3d 242] [consumer's suit against manufacturer of dietary supplement was based on personal injuries consumer sustained from taking supplement, not on manufacturer's right to advertise product]; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 673 [35 Cal.Rptr.3d 31] [distinguishing cases where defendants' communications were evidence of liability, not basis of liability]; *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1220–1228 [102 Cal.Rptr.3d 245] [client's suit against

attorneys was based on alleged fraud, legal malpractice, unfair business practices, and breach of fiduciary duty, not on attorneys' right of petition or free speech in making statements or conducting litigation on client's behalf].)

Nor does the use of a competitive bidding process necessarily concern the right of petition or free speech. In *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921 [116 Cal.Rptr.2d 187], an engineering firm, Kajima, brought an action against the City of Los Angeles for amounts allegedly due under a contract for which it had successfully bid. The city cross-complained, alleging 21 claims. Among other things, the cross-complaint alleged that Kajima had intentionally underbid the project and had violated the Public Contract Code by improperly identifying the subcontractors who would perform the work. Kajima filed an anti-SLAPP motion, arguing that all 21 claims in the city's cross-complaint were based on its right of petition, that is, the filing of its action for payment. The trial court granted the motion as to only one of the city's 21 claims. Kajima appealed as to the rest. In affirming, the Court of Appeal noted that "Kajima was not exercising its right of petition at the time of the . . . acts [alleged in the cross-complaint]; it was seeking to secure [the contract through bidding] and [was later] working on [the] construction project." (*Id.* at p. 930.) The court concluded that the city's claims were based on "Kajima's bidding and contracting practices, not . . . acts in furtherance of its right of petition or free speech." (*Id.* at p. 929; see *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 805 [63 Cal.Rptr.3d 575] (*Wang*) [observing that, in *Kajima*, plaintiff's bidding and contracting practices constituted business-related activities, not conduct in furtherance of right of petition].)

Last, in *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219 [132 Cal.Rptr.2d 57] (*Tuchscher*) and *Wang, supra*, 153 Cal.App.4th 790, the Fourth Appellate District, Division One, discussed the anti-SLAPP statute in the context of property development, specifically, bayfront property (*Tuchscher*) and a shopping center (*Wang*). In *Tuchscher*, the court held that a developer's action against a competitor, a city, and others for inducing breach of contract and related claims was a SLAPP because it was based on communications among the parties. (*Tuchscher*, at pp. 1228–1229.) In *Wang*, the court held that the property sellers' action against the purchaser, a city, and others for breach of contract, fraud, and related claims was not a SLAPP because "we cannot say as a matter of law that these plaintiffs are relying solely or principally upon protected communications for stating their claims. Instead, the [plaintiffs] should be able to plead *wrongful acts* by defendants, and then attempt to prove them with *evidence* about alleged misconduct that occurred behind the scenes, during the period of escrow, [and] during the permitting process [for the shopping center]." (*Wang*, at p. 808.)

The City's reliance on *Tuchscher, supra,* 106 Cal.App.4th 1219, is misplaced. The claims in *Tuchscher* were based on the parties' communications, thereby implicating the defendants' right of free speech. But GPC's claims are not based on such communications. In addition, the court in *Wang, supra,* 153 Cal.App.4th 790, essentially limited *Tuchscher* to its facts—the development of scenic bayfront property. (See *Wang,* at pp. 803–804.) In contrast, GPC's claims relate to the competitive bidding of a bus stop maintenance contract. And "there is no *concession* in this case, as in *Tuchscher,* that the 'matter of public interest' [clause, subdivision (e)(4) of section 425.16,] protects against *all* allegations of [the] complaint." (*Wang,* at p. 804, italics added.)

Here, assuming the claims against the City involve a public issue, we conclude that the City's petition and free speech rights are not implicated. GPC's claims for a writ of mandate and declaratory relief are not based on any communications between the City and others or on any petitioning activity by the City. Rather, the claims are based on competitive bidding laws found in the Public Contract Code and the City's municipal code. Those laws invite competition; guard against favoritism, improvidence, extravagance, fraud, and corruption; and secure the best work at the lowest price practicable. (See *Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 172–173 [36 Cal.Rptr.2d 521, 885 P.2d 934]; 10 McQuillin, The Law of Municipal Corporations (3d ed. rev. 2009) § 29:34, pp. 477–485.)

Although the City's communications may be of evidentiary value in establishing that it violated the law, liability is not based on the communications themselves. (See, e.g., *Gallimore v. State Farm Fire & Casualty Ins. Co., supra,* 102 Cal.App.4th at p. 1399; *Santa Monica Rent Control Bd. v. Pearl Street, LLC, supra,* 109 Cal.App.4th at pp. 1318–1319 & fn. 14; *Jespersen, supra,* 114 Cal.App.4th at pp. 631–632.) Just as the improper use of a competitive bidding process is not protected activity (see *Kajima Engineering & Construction, Inc. v. City of Los Angeles, supra,* 95 Cal.App.4th at pp. 929–932; *Wang, supra,* 153 Cal.App.4th at p. 805), neither is the mistake of forgoing the bidding process altogether. That City officials may have deliberated in deciding whether to invite bids in selecting GPC's successor does not mean the City exercised its right of petition or free speech. (See *San Ramon, supra,* 125 Cal.App.4th at pp. 353–355, 357.) The substance of the City's decision was not protected activity. (See *id.* at p. 355.)

Were we to hold otherwise, we "would significantly burden the petition rights of those seeking mandamus review for most types of governmental action. Many of the public entity decisions reviewable by mandamus or administrative mandamus are arrived at after discussion and a vote at a public meeting. . . . If mandamus petitions challenging decisions reached in this

manner were routinely subject to a special motion to strike—which would be the result if we adopted the [City's] position in this case—the petitioners in every such case could be forced to make a prima facie showing of merit at the pleading stage. While that result might not go so far as to impliedly repeal the mandamus statutes, . . . it would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power, which is at the heart of those remedial statutes. It would also ironically impose an undue burden upon the very right of petition for those seeking mandamus review in a manner squarely contrary to the underlying legislative intent behind [the anti-SLAPP statute]." (*San Ramon, supra*, 125 Cal.App.4th at pp. 357–358, citations & fn. omitted.) The same may be said of a declaratory relief action that challenges the validity of governmental conduct. And the chilling effect of requiring the plaintiff in an action for a writ of mandate or declaratory relief to make a prima facie showing of merit at the pleading stage is of particular concern because a defendant who prevails on an anti-SLAPP motion is entitled to an award of attorney fees. (See § 425.16, subd. (c).)

■ In closing, we note that suits brought *by* a governmental agency to enforce laws aimed at public protection are not subject to the anti-SLAPP statute. (See *City of Los Angeles v. Animal Defense League* (2006) 135 Cal.App.4th 606, 617–619 [37 Cal.Rptr.3d 632]; *City of Long Beach v. California Citizens for Neighborhood Empowerment* (2003) 111 Cal.App.4th 302, 306–309 [3 Cal.Rptr.3d 473]; § 425.16, subd. (d).) Similarly, GPC's suit to enforce the competitive bidding laws is outside the ambit of the statute. The City did not engage in protected activity by deciding whether those laws applied to a bus stop maintenance contract. (See *San Ramon, supra*, 125 Cal.App.4th at pp. 355, 357; *Jespersen, supra*, 114 Cal.App.4th at p. 632.)

Thus, the claims against the City are not based on any statement, writing, or conduct in furtherance of the City's right of petition or free speech. The trial court therefore erred in granting the City's anti-SLAPP motion. Because we conclude that the City did not satisfy its burden with respect to the first step of the anti-SLAPP analysis, we do not consider whether GPC met its burden of demonstrating it was likely to prevail on the merits of its claims. (See *City of Cotati v. Cashman, supra*, 29 Cal.4th at pp. 80–81; *San Ramon, supra*, 125 Cal.App.4th at p. 357.) Nor do we reach any issues regarding the denial of GPC's motion for a new trial. The reversal of the order and judgment granting the anti-SLAPP motion requires that we vacate the order and judgment awarding attorney fees to the City. (See *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC, supra*, 154 Cal.App.4th at p. 1288, fn. 24; *City of Riverside v. Stansbury, supra*, 155 Cal.App.4th at p. 1594; *Santa Monica Rent Control Bd. v. Pearl Street, LLC, supra*, 109 Cal.App.4th at p. 1320.)

## III

## DISPOSITION

The October 31, 2008 order and judgment granting the special motion to strike (Code Civ. Proc., § 425.16, subd. (b)(1)) are reversed, and the January 27, 2009 order and judgment awarding attorney fees to the City of Pico Rivera (Code Civ. Proc., § 425.16, subd. (c)) are vacated. Appellant is entitled to costs on appeal.

Rothschild, J., and Johnson, J., concurred.

A petition for a rehearing was denied February 22, 2010, and respondent's petition for review by the Supreme Court was denied April 22, 2010, S181052.