Filed 7/2/13  Knowledge and Intelligence Program et al. v. Lukin CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KNOWLEDGE AND INTELLIGENCE PROGRAM PROFESSIONALS, INC., | B234495 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. NC053503 ) |
| v. | |
| ANTHONY LUKIN et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Joseph E. DiLoreto, Judge.  Affirmed in part and reversed in part.

Kamala D. Harris, Attorney General, Kathleen Kenealy, Chief Assistant Attorney General, Steven M. Gevercer, Assistant Attorney General, Joel A. Davis and Elizabeth S. Angres, Deputy Attorneys General, for Defendants and Appellants.

Plager Schack and Michael L. Schack for Plaintiff and Appellant.

_____

This is an appeal and cross-appeal from an order denying in part and granting in part a special motion to strike under Code of Civil Procedure section 425.16, the "anti-SLAPP statute."[1]  The lawsuit was filed by plaintiff Knowledge and Intelligence Program Professionals, Inc. (KIPP) against four defendants:  two state agencies, the Commission on Peace Officer Standards and Training (POST) and the California Specialized Training Institute (CSTI) (the state defendants), and two individuals, CSTI employee Anthony Lukin (Lukin) and Kenneth L. Whitman (Whitman), a special consultant to POST (collectively defendants).[2]  We conclude that the causes of action do not arise from protected activity.  We reverse only that part of the order granting the motion to strike in favor of the state defendants and awarding them attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

POST was established by the Legislature in 1959 to set minimum selection and training standards for California law enforcement.  California Code of Regulations, Title 11, Division 2, sections 1051 through 1058 sets forth the extensive requirements for POST's certification of courses.  POST either certifies presenters to teach its courses or uses approved instructors.  POST also has full authority to decertify courses.  (Cal. Code Regs., tit. 11., § 1057.)  POST is required to review certified courses annually to evaluate "[t]he continuing need for the course, currency of curriculum, and adherence to requirements for course certification."  (Cal. Code Regs., tit. 11., § 1056.)  CTSI provides coordination of training and presentation of POST courses.

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

        SLAPP is an acronym for strategic lawsuits against public participation.  An order granting or denying a special motion to strike under section 425.16 is directly appealable.  (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

[2]     The action was also brought against Lukin's private company, Lukin & Associates, Inc., which has filed an answer and is not a party to these appeals.  While the appeals were pending, Whitman passed away on October 12, 2012.  The parties have reached a settlement agreement regarding Whitman.

**Allegations of the Third Amended Complaint**

The operative third amended complaint (TAC) alleges the following: Since 2001, KIPP has provided training and consulting services in the fields of homeland security, intelligence and strategic risk management to both the private and public sectors. Since at least 2004, KIPP has provided approved instructors to teach POST's Terrorism Liaison Officer (TLO) course, which has been approved by the United States Department of Homeland Security (DHS) for federal funding. In the fall of 2007, Lukin, in his individual capacity and as an agent for Lukin & Associates, orally agreed that KIPP would run full-page advertisements featuring TLO training in Police Chief and Sheriff magazines and that any out-of-state business generated from the advertising would go exclusively to KIPP. Until that time, Lukin & Associates had taught the TLO course outside California. In February 2008, Lukin, again in his individual capacity and as an agent for Lukin & Associates, demanded that all leads from KIPP's advertising be forwarded to him for POST through CSTI, and announced that POST, through Whitman, wanted the advertisements stopped and that only POST would offer the TLO training. Lukin took the leads to generate private consulting contracts for Lukin & Associates to teach the TLO course out of state.

The TAC also alleges that Lukin and Whitman issued unfounded negative reviews of KIPP's TLO curriculum, despite the curriculum bearing DHS approval, in order to divert all TLO training to Lukin & Associates. "The instigation and instruction of Whitman and Lukin was with the specific intent to wrongfully cause the TLO course to be suspended and/or decertified in an effort to prevent KIPP, with its superior training program, from building and growing a successful business providing training to peace officers throughout the United States, such that . . . Lukin & Associates could continue to thrive, thus allowing all TLO training to be diverted to Lukin & Associates."

The TAC also alleges that to "further their plan and conspiracy to divert private contracts for TLO courses to Lukin & Associates, on or about September 19, 2008, at the instigation of Whitman and Lukin, POST sent a letter" to KIPP demanding that it cease presenting the TLO course and that POST was "suspending certification" of the course.

3

From September 2008 to September 2009, no alternative TLO course approved by DHS was offered. "Tony Lukin and Ken Whitman, using the auspices of Lukin & Associates, have positioned Lukin & Associates to teach a new [TLO] course independent of POST for compensation paid directly to Tony Lukin and/or Lukin & Associates, and have done so in other states to the wrongful exclusion of Plaintiff." In October 2008, KIPP attended a meeting during which Lukin, acting on behalf of CSTI, "invited anyone who disagreed with the moratorium and decertification to file a lawsuit against POST."

The first cause of action alleges violation of the Political Reform Act (Gov. Code, § 87100) against Lukin and Whitman.[3] The TAC alleges that Lukin and Whitman "have and will continue to abuse their official positions to influence a governmental decision, e.g., the suspension and/or decertification of TLO courses and targeting qualified trainers such as KIPP, to benefit their own financial interests through the awarding of contracts and seminars for compensation to Defendant Lukin & Associates."

The second cause of action seeks declaratory relief against Lukin, Whitman and the state defendants. The TAC alleges that Lukin's and Whitman's actions have caused the state defendants, which are alleged to act as managers of federal grant monies, to violate the Economy Act (31 U.S.C. § 1535), by influencing state agencies to refuse to reimburse public safety agencies for TLO training, and have engaged in the improper assessment and collection of administrative fees from federal grant monies. Lukin's and Whitman's actions have also caused the state defendants to violate "California Open Meeting Acts" by imposing a moratorium on the TLO course in the absence of a public hearing.

The third cause of action seeks declaratory relief against only the state defendants. The TAC alleges that on or about June 24, 2010, POST transmitted to KIPP a letter stating that POST has a copyright on the TLO course materials, POST has the right to

---

[3]     The first cause of action was also brought against the state defendants. However, by the time the anti-SLAPP motion was heard, the trial court had already sustained a demurrer without leave to amend this claim against the state defendants. Similarly, the other causes of action not mentioned here were also sustained without leave to amend.

condition certification of the TLO course and restrain instructors from using the course materials for personal or business profit, KIPP violated these conditions by advertising on the Internet that it provides TLO training, and KIPP acted as a "presenter" without certification. A month later, on or about July 23, 2010, POST sent KIPP a letter stating that it did not have permission or approval to use the course material to provide instruction in a similar course being presented in Nevada. Implied in the letter was a threat that should KIPP not comply with the demand to stop using the course materials, POST would not permit it to act as an instructor of the TLO course.

Finally, the sixth cause of action alleges a violation of Business and Professions Code section 17200 against Lukin and Whitman, asserting that they have engaged in unfair business practices by violating the Political Reform Act.

The TAC prays for numerous declarations, including declarations that Lukin and Whitman have violated the Political Reform Act; that all defendants have violated the Economy Act and the California Open Meeting Acts; and that the state defendants improperly decertified or suspended KIPP's TLO curriculum, do not have a copyright on the TLO course materials, cannot prevent instructors on the use of course materials, and cannot withhold or instruct other agencies to withhold payment of federal grant monies to peace officers for reimbursement for such training.

**The Anti-SLAPP Motion**

Defendants filed a combined special motion to strike the TAC, on the grounds that the alleged conduct arose from protected activity, and KIPP could not show a likelihood of prevailing because, among other things, defendants have various statutory immunities from liability. Defendants sought their attorney fees and costs.

Defendants relied primarily on Whitman's declaration, which stated: "Suspensions of courses are a customary practice of POST when course curriculums are revised"; the revisions commenced in September 2008 and were completed in January 2009; in April 2009 KIPP and others were invited to become certified presenters of the newly revised TLO course but KIPP did not apply; KIPP has been employed as an instructor of the new TLO course by two of the currently certified presenters; and "[a]t no

5

time since its inception has the TLO Course been decertified, and, similarly, at no time has the course certification been suspended."

**Opposition Papers**

KIPP opposed the special motion to strike on the grounds that the TAC did not arise from protected activity, KIPP claims were exempt from the anti-SLAPP statute, KIPP could establish a prima facie case on the merits, and none of the privileges asserted by defendants applied.

KIPP relied on the declaration of its founder and principal, Harold Kempfer, who clarified that KIPP had never acted as a "presenter" of any TLO course, but had only provided approved instructors. Kempfer reiterated the TAC's allegations about referring advertising leads to Lukin. He also attached numerous e-mails on which he was copied, including one from Lukin to the City of Chicago, in which Lukin stated he was using his "personal computer as this is 'private,' not California State business," and provided information about the TLO course. Kempfer also attached a copy of the September 15, 2008, letter addressed to him from the assistant executive director of POST, Michael C. Dimiceli (Dimiceli), which stated that POST was "suspending certification and use of the current standardized course curriculum effective immediately," and that DHS had been notified that POST was "suspending presentations of the current course until the modifications to the curriculum" were completed and that no federal grants could be used to present the prior version of the course. KIPP also submitted its attorney's declaration, which asserted that the various documents attached to his declaration were obtained pursuant to his public records request to POST.[4] KIPP also filed evidentiary objections.

**Reply and Supplemental Papers**

Along with their reply brief, defendants filed their own evidentiary objections to KIPP's evidence. They also submitted a declaration from Lukin, who stated that he was not involved in the decision to suspend the TLO course, and a declaration from Dimiceli which stated that he had made the decision to suspend the TLO course without any

---

[4]     The attorney later submitted a copy of the written request he sent to POST.

6

consultation with or input from Lukin. Whitman filed another declaration stating that he used Lukin's personal e-mail when working on government business. The parties also filed supplemental briefs, declarations, and evidentiary objections.

**Trial Court Ruling**

After overruling the majority of evidentiary objections, the trial court denied the anti-SLAPP motion in its entirety as to Lukin and granted it as to Whitman. As to the state defendants, the trial court ruled: "The Special Motion to Strike of Defendant State is granted as to the first cause of action and denied as to the second cause of action." There is no ruling on the third cause of action against the state defendants. The court denied Lukin's request for attorney fees, and granted attorney fees to the state defendants in the amount of $1,680 and to Whitman in the amount of $2,360.

Defendants filed a notice of appeal and KIPP filed a notice of cross-appeal.

## DISCUSSION

### I. The Anti-SLAPP Statute and the Standard of Review

The anti-SLAPP statute provides that "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) An act "in furtherance of" the right of petition or free speech includes "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law"; "any written or oral statement or writing made in connection with an issue under consideration or review by . . . any other official proceeding authorized by law"; "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"; or "any other conduct in furtherance of the exercise of the constitutional right of petition or . . . of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

7

There are two components to a motion to strike brought under section 425.16. Initially, the defendant has the threshold burden to show that the cause of action arises from an act in furtherance of the right of petition or free speech. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Once that burden is met, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. (*Zamos v. Stroud, supra*, at p. 965; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.) To satisfy this prong, the plaintiff "'"must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821; *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568 [to establish a probability of prevailing, a plaintiff must substantiate each element of the alleged cause of action through competent, admissible evidence].) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

We independently review the record to determine whether the asserted causes of action arise from the defendant's free speech or petitioning activity, and, if so, whether the plaintiff has shown a probability of prevailing. (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1306; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3; *HMS Capital, Inc. v. Lawyers Title Co*. (2004) 118 Cal.App.4th 204, 212.) In making these determinations, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); see *Flatley v. Mauro* (2006) 39 Cal.4th 299, 326; *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.) In determining whether the plaintiff has met its burden, we do not reweigh the evidence, but accept as true all evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated the evidence submitted by the plaintiff as a matter of law. (*Mann v. Quality Old Time Service, Inc*. (2004) 120 Cal.App.4th 90, 105–106.)

## II.  Section 425.17

As an initial matter, we reject KIPP's contention that its causes of action are exempt from the anti-SLAPP statute pursuant to section 425.17, subsection (b).  This section provides that section 425.16 does not apply to "any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist: [¶]  (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member.  A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision.  [¶]  (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.  [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter."  (§ 425.17, subd. (b).)

KIPP cannot meet the first condition because the TAC seeks relief specific to KIPP.  The TAC seeks monetary damages of $500,000 for the first cause of action, as well as general and compensatory damages, punitive damages, interest, and "other and further relief."  KIPP asserts that following the trial court's ruling on the demurrers, there are no longer any claims for damages, except civil penalties.  But this fact is irrelevant because KIPP originally sought to benefit itself financially.  Moreover, the TAC alleges that Lukin and Whitman "wrongfully cause[d] the TLO course to be suspended and/or decertified in an effort to prevent KIPP, with its superior training program, from building and growing a successful business."  The TAC also seeks declarations that "POST and CSTI improperly decertified or suspended *KIPP's* DHS certified TLO curriculum," and POST does not have the authority to "prevent or preclude Plaintiff, in this instance, from engaging in legitimate interstate and intrastate commerce."  (Italics added.)  And the TAC seeks an injunction requiring "the immediate certification of KIPP and its instructors to provide such training."  Thus, the relief KIPP seeks is not "solely" in the public interest or on behalf of the general public.

9

### III. Protected Activity

#### A. The Parties' Positions

Defendants contend that KIPP's causes of action are protected acts because they arise from statements or writings made in connection with an issue under consideration or review in an official proceeding authorized by law. (§ 425.16, subd. (e)(2).) Defendants assert that "the predominate foundation of KIPP's case and each cause of action that survived demurrer are alleged statements or writings made in the process of reviewing and suspending presentation of the TLO Course during the brief period revisions were made to the course—official proceedings authorized by law," and that "[a]lleged statements made by POST representatives and CSTI representatives (including Lukin) in the course of administrative proceedings authorized by law serve as the foundation for each of KIPP's causes of action." In addition to specific allegations, defendants point to the letters identified in the TAC.

KIPP contends that the speech and letters are not at issue; rather, it is the "decision-making and policies of the respective state agencies that is at issue." KIPP argues that the manner in which defendants conducted themselves was "problematic," including suspending the TLO course when there is no provision in the regulations for suspension, failing to have a public hearing before suspending the course, precluding the use of federal homeland security funds for a training course approved by the DHS, and permitting state employees to engage in acts incompatible with their official positions. According to KIPP, the "issue is NOT what has been said or written by any individuals to accomplish a result. KIPP claims the laws have not been followed and that without a court order stating the conduct is improper, the conduct will be repeated."

10

## B. *The First Cause of Action*[5]

The first cause of action alleges that Lukin has violated the Political Reform Act. Government Code section 87100 provides: "No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."

KIPP asserts that the "essence of the First Cause of Action is a conflict of interest in which Lukin and Whitman abused their official jobs for private gain." KIPP further asserts: The "First Cause of Action merely alleges that the Individual Defendants violated [the Political Reform Act] by virtue of their relationship with [Lukin & Associates]. There is no free speech right nor right to petition implicated from the operation of a private business enterprise for profit in violation of [the law]. Therefore, as to the First Cause of Action, the 'arising out of protected activity' prong is not met and Lukin's Motion as to that cause of action was properly denied."

We agree. The TAC makes clear that KIPP is complaining that Lukin should not be allowed to operate a private business in direct conflict with his official position. As KIPP asserts in its reply brief, "It is Lukin's operation of the private business that underpins the First Cause of Action against Lukin and the State Defendants. Put another way, but for Lukin's operation of his private business, there could be no cause of action for Violation of the Political Reform Act—regardless of what Lukin may have said or written."

Moreover, the TAC does not allege that an official proceeding authorized by law took place. Rather, the TAC alleges that the suspension of the TLO course was improper in large part precisely because there was no official proceeding authorized by law,

---

[5] As previously noted, by the time the trial court ruled on the anti-SLAPP motion, the court had already sustained a demurrer without leave to amend the first cause of action against the state defendants. Accordingly, the trial court lacked jurisdiction to rule on the state defendants' anti-SLAPP motion as to this cause of action. That part of the trial court's order granting the anti-SLAPP motion of the state defendants as to the first cause of action is therefore a nullity and is hereby stricken.

11

namely, a public hearing on the matter. Even if it could be said that Lukin participated in the decision to suspend the TLO course, this would not subject the first cause of action to the anti-SLAPP statute. (See *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1224 ["That City officials may have deliberated in deciding whether to invite bids in selecting GPC's successor does not mean the City exercised its right of petition or free speech"].)

Furthermore, "if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion." (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414–415; *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 ["[I]t is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." The gravamen of the first cause of action is that Lukin abused his official position to benefit his own private company in violation of the law. This is not protected activity.

## C. The Second Cause of Action

The second cause of action seeks an order from the court declaring, essentially, that the state defendants have not been acting in compliance with the law. The TAC alleges that such violations will continue in the absence of a court order stopping the abuses. The acts alleged to give rise to the need for declaratory relief are the failure to conduct an open meeting before suspending the TLO course in violation of the Bagley-Keene Open Meeting Act (Gov. Code, §§ 11120-11132);[6] the failure to comply with the

---

[6] Government Code section 11130, subdivision (a) provides in part that "any interested person may commence an action by mandamus, injunction, or declaratory relief for the purpose of stopping or preventing violations or threatened violations of this article or to determine the applicability of this article to past actions or threatened future action . . . ."

Economy Act (31 U.S.C. § 1535), which requires that federal funds be used in the most economical way; the failure to comply with the Code of Regulations in certifying and decertifying courses; and allowing employees to engage in activities incompatible with their official duties. None of these remedies are based on the exercise of a free speech or petitioning right by the state defendants. Instead, these remedies arise out of the state defendants' failure to comply with the law.

In *Graffiti Protective Coatings, Inc. v. City of Pico Rivera, supra*, 181 Cal.App.4th 1207, the appellate court held that the city's anti-SLAPP motion should be denied in an action seeking declaratory relief to invalidate a city contract as not complying with municipal laws requiring competitive bidding. The court said, "We conclude that, even if plaintiff's claims involve a public issue, they are not based on any statement, writing, or conduct by the city in furtherance of its right of free speech or its right to petition the government for the redress of grievances. Rather, plaintiff's claims are based on state and municipal laws requiring the city to award certain contracts through competitive bidding." (*Id.* at p. 1211.) Thus, the plaintiff's suit to enforce the competitive bidding laws fell outside the ambit of the anti-SLAPP statute. (*Id.* at p. 1225.)

Likewise, in *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 355, the appellate court affirmed the denial of an anti-SLAPP motion in an action challenging a public agency's determination of retirement benefits. The court stated, "there is nothing about [the agency's] decision, qua governmental action, that implicates the exercise of free speech or petition." (*Id.* at p. 355.) The court added that the agency "was not sued based on the content of speech it has promulgated or supported, nor on its exercise of a right to petition. The action challenged consists of charging the District more for certain pension contributions than the District believes is appropriate. This is not governmental action which is speech-related." (*Id.* at p. 357.)

Similarly here, the declaratory relief sought in the second cause of action is not based on any statement, writing, or conduct in furtherance of the state defendants' right of petition or free speech. Indeed, "Actions to enforce, interpret or invalidate

13

governmental laws generally are not subject to being stricken under the anti-SLAPP statute. If they were, efforts to challenge governmental action would be burdened significantly." (*USA Waste of California, Inc. v. City of Irwindale* (2010) 184 Cal.App.4th 53, 65.)

### D. The Third Cause of Action

The TAC also seeks declaratory relief against the state defendants in the third cause of action. However, the trial court's order on the anti-SLAPP motion makes no mention of this cause of action. The parties offer their own interpretations of how the trial court intended to rule. But neither the written order nor the hearing on the anti-SLAPP motion provide any guidance, and we are not willing to speculate as to how the trial court intended to rule. As the parties moving to strike the TAC, defendants were obligated to obtain a complete ruling on their motion. There is no indication in the record on appeal that defendants sought reconsideration of the order on the ground that the trial court did not rule on the third cause of action. Because there was no ruling by the trial court on this cause of action, there is nothing for us to review. (See, e.g., *People v. Wilson* (2008) 44 Cal.4th 758, 798–799; *People v. Samayoa* (1997) 15 Cal.4th 795, 827–828.) Accordingly, we treat this cause of action as still viable.

### E. The Sixth Cause of Action

The sixth cause of action alleges that Lukin violated Business and Professions Code section 17200 by using his government position to benefit his private company. Like the first cause of action against Lukin, the thrust of the sixth cause of action is Lukin's conflict of interest to the benefit of his own company, and not any protected rights to petition or free speech.[7]

---

[7] Because we conclude that defendants did not satisfy their burden with respect to the first step of the anti-SLAPP analysis, we do not consider whether KIPP met its burden of demonstrating it was likely to prevail on the merits of its claims. (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, *supra,* 181 Cal.App.4th at p. 1225.) Accordingly, we deny KIPP's request to take judicial notice of a related case, as the noticed matter is not relevant to the first prong of the anti-SLAPP analysis.

14

## IV. Attorney Fees

Because we reverse the order granting the anti-SLAPP motion as to the state defendants on the first cause of action, having found such ruling void, we reverse the award of attorney fees to the state defendants, since this was the only cause of action on which the ruling on the anti-SLAPP motion was in the state defendants' favor.

We deny KIPP's request for an award of attorney fees under section 425.16, subdivision (c) on the ground that the anti-SLAPP motion was frivolous. KIPP did not request attorney fees in the trial court, and therefore has forfeited the right to do so now.

## DISPOSITION

The portion of the order on the anti-SLAPP motion granting the motion as to the state defendants on the first cause of action and awarding the state defendants attorney fees is reversed. In all other respects, the order on the anti-SLAPP motion is affirmed. The parties to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
               ASHMANN-GERST

We concur:


_____, J.
      CHAVEZ


_____, J.*
      FERNS

---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15