Filed 11/17/20  Sallah v. Ujas Barstow, LLC CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| JAMES D. SALLAH,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>UJAS BARSTOW, LLC et al.,<br><br>    Defendants and Appellants. | D075874<br><br><br>(Super. Ct. No. 37-2016-00020073-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Vivoli Saccuzzo, Michael W. Vivoli and Jason Paul Saccuzzo for Defendant and Appellant Ujas Barstow, LLC.

Gregor Law Offices and Theodore Steven Gregor for Defendant and Appellant Columbia Downtown, LLC.

Law Offices of Joseph A. Lara and Joseph Alan Lara for Defendant and Appellant Chhatrala Investments, LLC.

O'Hagan Meyer, Theodore Clarke Peters and Sanay B. Panchal for Plaintiff and Respondent James D. Sallah.

Court-appointed monitor James D. Sallah sued three corporate entities to recover funds allegedly due to defrauded investors. Claiming promissory fraud, Sallah alleged that the alter-ego entities executed a $930,000 promissory note having no intention to repay the loan. Defendants moved to strike the complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16), arguing the fraud claim arose out of protected postexecution settlement discussions that Sallah referenced in his operative complaint.[1] The trial court disagreed and denied the motions, concluding the fraud claim instead turned on defendants' false promise to repay the note at the time it was executed. Defendants challenge that ruling on appeal, but we agree with the trial court's sound reasoning.

The basis of Sallah's fraud claim is defendants' execution of a promissory note they allegedly had no intention of repaying. Although the complaint references later false assurances made during settlement talks, these merely provide *evidence* of defendant's earlier fraudulent intent. In the first prong of the anti-SLAPP inquiry, defendants must show that the cause of action arises out of protected activity. The Supreme Court cautions that courts must "respect the distinction between activities that form the basis for a claim and those that merely . . . provide evidentiary support for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1064 (*Park*).) We conclude defendants did not meet their moving burden and accordingly affirm the order denying their anti-SLAPP motions.

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

2

FACTUAL AND PROCEDURAL BACKGROUND

Florida-based hedge fund OM Global Investment Fund, LLC (OM Global) and its portfolio manager Gignesh Movalia allegedly misrepresented to investors that their funds would be placed solely in pre-IPO Facebook stock. With that money, OM Global instead extended unauthorized loans totaling $3.2 million to various companies. These loans formed the basis for an enforcement action by the Securities and Exchange Commission. Sallah was appointed by a Florida court as a corporate monitor to marshal OM Global's assets for the benefit of defrauded investors.[2]

This action arises out of a $930,000 promissory note executed by a California-based corporate entity on January 4, 2013, committing to repay OM Global $930,000 in principal plus a $27,900 origination fee by February 28, 2013. The note was issued by "Columbia Downtown, LLC (Chhatrala Group)," and signed by Hemant Chhatrala for the borrower and Jenish Patel as a witness.[3] Patel, a relative of Hemant, served as Chief Investment Officer of the "Chhatrala Group," an informal trade name used by associated entities. Hemant and Patel allegedly signed the note to secure funds to assume a leasehold interest in a Ramada Inn located in Barstow, California. No payment was ever made on the note.

In the operative Second Amended Complaint (SAC), Sallah alleges that Chhatrala Barstow, LLC (Barstow) and Chhatrala Investments, LLC (Chhatrala Investments) are alter egos of Columbia Downtown, LLC

---

[2]     Additional background is provided in our resolution of the parties' prior nonpublished opinion, *Sallah v. Chhatrala Barstow, LLC*, D072326 (Mar. 26, 2018).

[3]     To avoid confusion with the various Chhatrala entities involved in this appeal, we refer to Hemant Chhatrala by his first name and intend no disrespect.

(Columbia), the entity that issued the note.[4] Sallah seeks to hold all three entities jointly liable for breach of contract, restoration of a lost instrument, and fraud.

Only the fraud cause of action is before us. Sallah alleges that Columbia, acting through its agent Hemant, promised on January 4 to repay the loan and origination fee. Before signing the note, Patel assured Movalia that he would send OM Global an executed copy of the note at a later date. Relying on these representations, OM Global lent Columbia $930,000, and at Patel's written request wired the funds to Barstow (for Barstow to acquire the hotel). Patel sent Movalia an executed copy of the note on February 13.

According to Sallah, defendants never had any intention of repaying the loan. Instead the entities agreed to: "(a) have Columbia execute the Note as the borrower, as evidenced by the signatures of Hemant Chhatrala and Jenish Patel; (b) have a related entity ([Barstow]) receive the funds pursuant to the Note; but then (c) assert that Hemant Chhatrala's signature on the Note was forged and that Jenish Patel was not authorized to enter the loan transaction on behalf of Columbia; and (d) then claim that Columba never received any of the loaned funds, all in order to facilitate the argument that the Note cannot be enforced." The fraud cause of action also includes allegations that defendants made false promises to repay the loan during subsequent settlement talks in connection with Florida litigation. According to Sallah, these false assurances "were nothing more than a rouse [*sic*] designed solely for the purpose of prolonging the time that they could keep [Sallah] ignorant of the true facts." In truth, "neither Columbia, nor the

---

4      After the lawsuit was filed, Chhatrala Barstow, LLC changed its name to Ujas Barstow, LLC. We use the name "Barstow" as shorthand for both entities.

4

Alter Ego Defendants had any intention of repaying the moneys loaned pursuant to the Note." But for this fraud, Sallah avers that OM Global never would have loaned Columbia nor wired Barstow the $930,000.

Defendants moved to strike the fraud cause of action under the anti-SLAPP statute (§ 425.16). They presented a diametrically different view of what occurred, claiming the "Note is a fake and a forgery manufactured by OM Global's former manager and convicted felon, Gignesh Movalia, in apparent collusion with Jenish Patel . . . , Hemant Chhatrala's estranged nephew who has long-since fled to India." In three substantively identical briefs, defendants argued the fraud claim was premised on statements allegedly made during settlement negotiations and, thus, arose out of protected activity. Defendants further argued that Sallah could not show the minimal merit of his fraud claim because any statements they made during settlement discussions were covered by the litigation privilege (Civ. Code, § 47, subd. (b)).

In opposition, Sallah argued that his promissory fraud claim rested on the false promise to repay at the time the note was executed, not on any false assurances made during later settlement discussions. As Sallah explained, he included allegations regarding later false assurances merely to "illustrate a pattern of misbehavior and deception by Defendants"—i.e., to "show a course of conduct whereby Defendants *continued* to make false assurances after the fact," which ultimately delayed Sallah's discovery of the fraud.

The trial court agreed with Sallah on this threshold matter and denied the anti-SLAPP motions. As the court explained, Sallah alleged promissory fraud, "which requires proof that defendants had no intention of performing when the promise was made." This fraud allegedly occurred on January 4, 2013, when the note was executed and OM Global wired the funds to

Barstow. Although later statements made by Hemant and Patel and information obtained in discovery could provide *evidence* that defendants never intended to repay, these allegations were not the basis for the promissory fraud claim. As such, defendants did not meet their moving burden to demonstrate that the fraud claim was based on protected activity.

DISCUSSION

Challenging the trial court's ruling, defendants contend that alleged statements they made during settlement discussions in the Florida action were essential, and not merely incidental, to Sallah's fraud claim. As such, defendants maintain they met their moving burden to show that the fraud claim arose out of their protected activity. Defendants further argue that Sallah offered no admissible evidence to show that the fraud claim had minimal merit. Our conclusion on the first issue avoids the need to reach the second. As we explain, the trial court correctly determined that Sallah's promissory fraud cause of action did not arise out of protected activity to trigger application of the anti-SLAPP statute.[5]

Enacted in 1992, section 425.16 seeks to protect defendants from meritless lawsuits that chill their exercise of constitutional rights to speech

---

[5] Sallah seeks judicial notice of Columbia's Articles of Organization and seeks to supplement the record with new evidence, the "Second Amended Operating Agreement for Chhatrala Investments, LLC." As Sallah explains, both documents were inadvertently omitted from his "Compendium of Evidence" filed before the trial court; he asserts that they demonstrate defendants' "interrelatedness" and Patel's apparent authority to bind Columbia. Both requests are denied. We find no exceptional circumstances to deviate from the usual rule limiting appellate inquiry to matters that were part of the record at the time the trial court ruled. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) Moreover, the corporate documents Sallah proffers are irrelevant to our consideration of the narrow anti-SLAPP issue addressed on appeal. (See *San Diegans for Open Government v. City of San Diego* (2015) 242 Cal.App.4th 416, 432, fn. 6.)

and petition. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*); § 425.16, subd. (a).) It does so by authorizing defendants to file a special motion to strike any claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . , unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) By creating a summary-judgment-like procedure at the outset of the case, the anti-SLAPP statute provides for early dismissal of actions deemed to be "strategic lawsuits against public participation," or SLAPP suits. (See *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 (*Navellier*).)

A defendant filing an anti-SLAPP motion bears the initial burden to establish that the challenged claim arises from the defendant's protected activity. (*Wilson, supra,* 7 Cal.5th at p. 884; *Baral, supra,* 1 Cal.5th at p. 396.) This requires a prima facie showing that activity underlying a plaintiff's causes of action is statutorily protected. (*Wilson,* at pp. 887−888.) If the defendant makes the required showing, the burden then shifts to the plaintiff to demonstrate that its claim has minimal merit. (*Id.* at p. 884.) "The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." (*Baral,* at p. 396.) If the plaintiff cannot make that showing, the court will strike the claim. (*Ibid.*; *Wilson,* at p. 884.)

Focusing our attention on the first prong of the anti-SLAPP inquiry, we review de novo whether Sallah's fraud claim arises from protected activity. (*Wilson, supra,* 7 Cal.5th at p. 884.) At this stage, defendants "must make two related showings." (*Id.* at p. 887.) "Comparing its statements and

7

conduct against the statute, [they] must demonstrate activity qualifying for protection. (See § 425.16, subd. (e).) And comparing that protected activity against the complaint, [they] must also demonstrate that the activity supplies one or more elements of a plaintiff's claims." (*Wilson,* at p. 887.)

Section 425.16 protects "any written or oral statement or writing made before a legislative, executive, or judicial proceeding" (§ 425.16, subd. (e)(1)) or any such statement made "in connection with an issue under consideration or review" in such proceedings (*id.*, subd. (e)(2)). If a statement falls into one of these categories, a defendant does not separately need to show that his or her statement was made in connection with a "public issue." (*Briggs v. Eden Council for Hope and Opportunity* (1999) 19 Cal.4th 1106, 1122–1123.) Statements made during settlement talks are statutorily protected as statements made in connection with an underlying lawsuit. (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 114.) The anti-SLAPP statute even protects allegations of fraudulent promises made during the settlement process. (*Ibid.*) It is undisputed that Sallah's fraud cause of action references protected activity, by including allegations that false assurances were made by Columbia, Hemant, and Patel during settlement negotiations that the earlier-executed note would be repaid.

But the question becomes whether the fraud claim is *based on* that protected activity—the anti-SLAPP statute only covers claims " 'arising from any act of [the defendant] in furtherance of the [defendant's] right of petition or free speech.' " (*Park, supra,* 2 Cal.5th at p. 1062.) "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." (*Navellier, supra,* 29 Cal.4th at p. 89.) "In the anti-SLAPP context, the

8

critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Ibid.*) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park*, at p. 1062.) In making this inquiry, courts "have taken care to respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity *or provide evidentiary support for the claim.*" (*Id.* at p. 1064, italics added; see *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214–1215 ["In deciding whether an action is a SLAPP, the trial court should distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity."].) Thus, to meet their moving burden, defendants needed to show that one or more elements of the promissory fraud claim rests on the false assurances allegedly made during settlement talks. (*Park*, at p. 1063; *Wilson, supra,* 7 Cal.5th at p. 887.)

Defendants did not carry that burden. Fraud requires a misrepresentation, knowledge of falsity (scienter), intent to induce reliance, justifiable reliance, and damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 (*Lazar*).) " 'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." (*Ibid*; see Civ. Code, § 1710, subd. (4) [defining deceit as the making of a promise "without any intention of performing it"].) None of the essential elements of Sallah's claim for promissory fraud rest on statements made during settlement discussions after the execution of the note. Instead, the claim is based on proof that defendants did not intend to repay *at the time* they

9

executed the note. Later statements merely provide evidentiary support for defendants' intent at the time the note issued. (See *Park, supra,* 2 Cal.5th at p. 1068 [where the elements of plaintiff's claims did not depend on proof of the protected activity alleged in the complaint, that activity did not form the basis of the challenged claim]; *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 880 (*Gaynor*) [anti-SLAPP statute did not apply where allegations of protected activity would merely provide *evidence* of liability rather than form the basis for it].)

A careful reading of the SAC supports this inescapable conclusion. The fraud claim turns on defendants' promises in *executing* the note. Sallah alleges that defendants "expressly promised" to repay the loan and origination fee in signing the note on January 4. OM Global relied on this representation in extending the loan. The representations "were in fact false." In truth, defendants never intended to repay and planned to avoid liability by claiming Hemant's signature was forged and that Patel lacked authority to bind Columbia, while denying that Columbia ever received the funds. *Evidence* of this intent was apparent in later settlement talks— Hemant and Patel made false assurances that the note would be repaid, only to later claim "that the Note had been forged and that Jenish Patel had no authority." Given discovery revelations of links between the defendants, Sallah inferred that "Defendants never intended to repay any portion of the Note." OM Global would never have loaned Columbia or its alleged alter egos money, had it known they had no intention of repaying. As we read it, the fraud claim turns on a false promise to repay at the time the note was signed, inducing OM Global to loan defendants money in reasonable reliance of that

10

promise and incur damages. It does not turn on any false assurances made thereafter—as to which Sallah does not allege any action taken in reliance.[6]

*Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18 (*Tenzer*) does not suggest otherwise. It merely holds that promissory fraud cannot be *proven* by mere evidence that a promise was made and not fulfilled. (*Id.* at p. 30.) "Rather, 'something more than nonperformance is required to prove the defendant's intent not to perform his promise.' " (*Ibid.*; accord *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183 ["the intent element of promissory fraud entails more than proof of an unkept promise or mere failure of performance"].) Relying on *Tenzer*, defendants contend that allegations regarding the parties' settlement discussions were essential, and not merely incidental, to the fraud claim. Without those allegations, Sallah merely alleged that Columbia executed the note and did not intend to repay. Indeed, so. But these *are* the essential elements of a promissory fraud claim. Although *Tenzer* requires more to *prove* defendants' intent not to perform beyond mere nonperformance, such evidence is not itself a required *element* of the claim.

Because a defendant's fraudulent intent can rarely be shown by direct evidence, it "must often be established by circumstantial evidence"—

---

6    Defendants suggest the SAC alleges a "fantastic" theory premised on abuse of process—i.e., "that Defendants planned from the very start to induce OM Global into lending the sum of $930,000 with the intent to claim *in litigation* the Note was forged, to claim *in litigation* JP was not authorized to enter the loan transaction on behalf of Columbia, to claim *in litigation* Columbia never received the money, *and then to use and abuse settlement discussions and discovery* to prevent the Monitor from learning the truth about the fraud." (Italics added.) But the claim as pleaded is premised on something more basic—a false promise to repay at the time the note was signed. It does not depend on any abuse of process by defendants during subsequent litigation, discovery, or settlement discussions.

11

including "from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, *or his continued assurances after it was clear he would not perform.*" (*Tenzer, supra,* 39 Cal.3d at p. 30, italics added; see *Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1239 [because there is "rarely" direct evidence of a defendant's fraudulent intent, a plaintiff may rely on a defendant's subsequent conduct as circumstantial evidence "to show that a defendant made the promise without the intent to keep the obligation"]; 5 Witkin, Summary of Cal. Law (11th ed. 2020), Torts, § 900 ["It is a difficult matter to prove the original lack of intention by direct evidence. But circumstantial evidence of subsequent conduct is admissible and may be sufficient."].) Simply put, that Sallah endeavors to prove defendants' fraudulent intent by pointing to false assurances made after the fact does not mean that his promissory fraud claim is based on those later assurances.[7]

The question on prong one is whether a plaintiff's cause of action arises out of the defendant's protected activity. Here it plainly does not—the basis for the promissory fraud claim is that defendants executed the note on January 4, 2013 having no intention to repay. That their contemporaneous intention may be *proven* at trial by false assurances made later during settlement discussions does not change the analysis. (See *Park, supra,* 2 Cal.5th at p. 1068; *Gaynor, supra,* 19 Cal.App.5th at p. 880.) As the trial

_____

[7] Defendants question why the allegations are included in the SAC if they do not underlie the fraud action. Although we cannot be certain, claims of fraud and deceit require particularized pleading. (*Lazar, supra,* 12 Cal.4th at p. 645; *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216−217.) Mindful of these requirements, Sallah may have felt the need to plead facts supporting his allegation that defendants had no intent to repay the note at the time the note was signed.

court correctly determined, the promissory fraud cause of action does not arise out of defendant's protected activity. Because defendants did not meet their moving burden, their anti-SLAPP motions were properly denied.

DISPOSITION

The order denying defendants' special motions to strike the SAC is affirmed. Sallah is entitled to recover his costs on appeal.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


GUERRERO, J.