Filed 3/18/25  Dahan v. Siag CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| EDEN DAHAN, et al., | D082900 |
| Cross-complainants and Respondents, | |
| v. | (Super. Ct. No. 37-2020-00046315-CU-OR-CTL) |
| OSNATH SIAG, et al., | |
| Cross-defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Joel Wohlfeil, Judge.  Affirmed.

MSW Law Firm and Martin S. Wolf for Cross-defendants and Appellants.

Plumtree & Brunner, A. Maria Plumtree, Nicholas Brunner; Ferguson Case Orr Paterson and Wendy C. Lascher for Cross-complainants and Respondents.

INTRODUCTION

This is an appeal from an order denying an anti-SLAPP motion.[1]  Eden Dahan and Israel Dahan (collectively, the Dahans) cross-complained in the underlying action against Osnath Siag, Dany Siag, Emily Siag, OSB Investments, LLC, and Mega Holding Group, LLC (collectively, the Siag parties) for fraud and breach of fiduciary duty arising out of a real estate deal.  The cross-complaint includes allegations that Dany[2] has been criminally prosecuted for real estate fraud and has also been a party to 55 other civil lawsuits involving fraudulent real estate transactions.  The cross-complaint alleged the wrongful conduct that gave rise to the other litigation was similar to the wrongful conduct alleged to have been committed against the Dahans and showed a pattern and practice and modus operandi for committing real estate fraud.

The Siag parties responded to the cross-complaint with an anti-SLAPP motion aimed at the allegations describing the 55 other lawsuits.  In their view, the cross-complaint's two causes of action for breach of fiduciary duty and fraud are "based" on these 55 other lawsuits, which involve protected activity, and the entire cross-complaint is therefore subject to a special motion to strike.

After conducting an independent review, we conclude the trial court correctly denied the anti-SLAPP motion.  The motion failed to distinguish between "(1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity."

---

[1]    " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*).)

[2]    We refer to individuals by their first names to avoid confusion.

2

(*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214–1215 (*Graffiti Protective Coatings*).) "[P]rior litigation may provide evidentiary support for [a] complaint without being a basis of liability." (*Id.* at p. 1215.) Relying on this settled principle, we affirm the trial court's ruling.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Cross-Complaint*

Osnath and De Terto, LLC filed a complaint against Eden Dahan, Israel Dahan, ELD Investment, LLC, and Builders Green Remodeling, Inc. The operative complaint alleged the following: Osnath and Eden entered a written agreement to create a jointly owned limited liability company, De Terto, LLC for the purpose of acquiring real property in La Jolla. After De Terto, LLC was created, Eden and her husband, Israel, embezzled funds from the bank account of De Terto LLC. They allegedly moved the embezzled funds first to Builders Green Remodeling, a company Eden leads as chief executive officer, and then to ELD Investment, a sham company run by Israel. They also invested embezzled funds into residential properties they owned in La Jolla. The complaint asserted causes of action for breach of contract, breach of fiduciary duty, and conversion. It sought damages, estimated to be $2 million, punitive damages, and an accounting.

The Dahans cross-complained against the Siag parties. The operative cross-complaint alleged the following: Osnath's brother, Dany, agreed to represent the Dahans "as their financial advisor" in connection with "purchasing, remodeling, and selling" real property located in La Jolla. The parties agreed to split the profits equally. However, after the property was remodeled and sold, Dany secretly diverted $455,500 of the profits to a

3

company he controlled, Mega Holding Group. He also arranged for two fraudulent deeds of trust to be recorded on the property. Dany conspired with the other Siag parties to engage in this wrongful conduct. The cross-complaint sought damages and punitive damages for breach of fiduciary duty and fraud.

Important to the subsequent proceedings, the cross-complaint included allegations that discussed prior litigation involving Dany. The Dahans alleged that Dany had a prior pattern and practice of engaging in "wire transfer fraud, tax fraud, embezzlement, falsification of documents, and . . . other wrongful conduct" in connection with real estate transactions with other individuals, and that he had specific "modus opperandi" [*sic*] for perpetrating fraud. It alleged Dany would "enter[ ] into an agreement with another person to purchase, remodel, and sell real property for profit, . . . induce[ ] the other person to wire money for the purchase of real property, . . . wrongfully divert[ ] money used to purchase the property through escrow to one of [his] companies without notifying the other person, . . . execute[ ] two fraudulent deeds of trust on the subject property," and "use[ ] [c]ross-[d]efendant Mega Holdings in connection with [his] recordation of deeds of trust on the subject property." It alleged Dany and the other Siag parties "engaged in the same type of wrongful conduct" in connection with the real property in La Jolla that Dany had agreed to help purchase, remodel, and sell.

As support for these allegations, the cross-complaint alleged Dany had been the plaintiff or defendant "in at least 55 lawsuits involving numerous transactions related to real property." (Italics and underline omitted.) It listed each of the 55 lawsuits along with their case numbers. And it alleged Dany also "has had criminal charges filed against him for wire transfer fraud

4

that [he] committed related to [other] real property transactions," and that he "was prohibited from engaging in real property transactions" of the kind at issue in the underlying lawsuit.

## II.

### *The Anti-SLAPP Motion*

The Siag parties filed a special motion to strike the cross-complaint pursuant to Code of Civil Procedure section 425.16,[3] the anti-SLAPP statute. The motion was directed at the subset of allegations in the cross-complaint that described the series of lawsuits involving Dany "over the last 30 years." As noted, the Dahans contend the lawsuits arose out of fraudulent real estate transactions similar to the one alleged in their cross-complaint.

In the anti-SLAPP motion, the Siag parties asserted the cross-complaint's causes of action were "based" on the allegations that Dany was involved in 55 other lawsuits and therefore arose from protected activity within the meaning of Code of Civil Procedure section 425.16. They claimed Dany's communications concerning the lawsuits fell within the scope of two categories protected by the anti-SLAPP statute because they were made before or in connection with a judicial proceeding within the meaning of Code of Civil Procedure section 425.16, subdivision (e)(1) and (2). They further claimed his communications were protected by the civil litigation privilege as it is codified in Civil Code section 47, subdivision (b).

In their opposition to the motion, the Dahans asserted their causes of action against the Siag parties did not arise from protected activity within the meaning of section 425.16. They explained, "[a]lthough the [c]ross-[c]omplaint alleges that [Dany] has been involved in no less than 55 lawsuits

---

3  Undesignated references are to the Code of Civil Procedure.

5

involving his fraudulent conduct in connection with real property transactions, [the] causes of action do not seek relief based on [Dany]'s filing of or participation in the lawsuits. Instead, the causes of action seek relief based on fraudulent conduct [Dany] engaged in, which is similar to the fraudulent conduct that caused [him] to be involved in the 55 lawsuits." (Italics omitted.) Therefore, they argued, because the allegations that Dany was involved in 55 other lawsuits constitute "evidence in the case," and no claim is based on them, they are "at best" " 'incidental protected activity,' " not subject to the provisions of section 425.16. (Underline, boldface and italics omitted.) The Dahans further asserted the anti-SLAPP motion was frivolous and requested sanctions.

The trial court denied the anti-SLAPP motion. The court ruled the Siag parties failed to establish a threshold showing that the claims asserted in the cross-complaint arose from protected activity. The court explained, "In the anti-SLAPP context, the critical consideration is whether the case of action is *based* on . . . protected free speech or petitioning activity." The court ruled the subset of allegations in the cross-complaint that addressed the 55 other lawsuits did not "form the basis for the causes of action asserted in the [c]ross-[c]omplaint," and "were not triggered by protected conduct. Instead, the petitioning activity set forth in the [c]ross-[c]omplaint merely evidences a course of conduct related to alleged fraudulent real estate transactions, and the failure to disclose prior criminal activity. This action was not triggered by, and is not based on, conduct of [the Siag parties] in the prior actions to defend themselves. The potential liability of [the Siag parties] is not based on protected speech or petitioning activity such that [the Siag parties] have not satisfied their burden of demonstrating that the anti-SLAPP statute applies." Because the court found the Siag parties failed to satisfy their

6

burden with respect to the first prong of section 425.16, the court ruled it was not necessary to address the second prong of the analysis. It also denied the Dahans' request for sanctions.

DISCUSSION

I.

*General Legal Principles*

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).) The statute applies to causes of action against a person that "arise[ ] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

"A court evaluates an anti-SLAPP motion in two steps." (*Wilson, supra,* 7 Cal.5th at p. 884.) First, "the moving defendant bears the burden of establishing that the challenged allegations or claims arise from protected activity in which the defendant has engaged." (*Ibid.* [cleaned up].) Second, if the defendant carries its first-step burden, the plaintiff must then demonstrate its claims have at least minimal merit, meaning "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) If the plaintiff fails to meet its burden on the second step, the court will strike the claim. (*Wilson,* at p. 884.)

Here, because the trial court determined the moving parties failed to meet their initial burden, we are concerned only with the first step of the analysis. "At this stage, the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is

7

statutorily protected, not whether it has shown its acts are ultimately lawful." (*Wilson, supra,* 7 Cal.5th at p. 888 [cleaned up].)

"To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Wilson, supra,* 7 Cal.5th at p. 884.) "Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of acts protected by the anti-SLAPP statute." (*Ibid.* [cleaned up].) Under section 425.16, the four categories of protected activity include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

## II.

### *The Siag Parties Have Failed To Meet Their First-Step Burden*

The Siag parties contend Dany's communications in prior judicial proceedings fall within the scope of the first two categories of activity protected by section 425.16, subdivision (e)(1) and (2). They contend both causes of action asserted in the cross-complaint are therefore subject to anti-SLAPP protections. As they see it, the two causes of action are based on the allegations Dany was involved in 55 other lawsuits and these allegations, in

8

turn, are based on Dany's protected activity in the prior judicial proceedings. Their claim lacks merit.  Our review is de novo.  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

"Anti-SLAPP motions may only target claims 'arising from any act of [the defendant] in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Park, supra,* 2 Cal.5th at p. 1062, quoting § 425.16, subd. (b).)  "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park*, at p. 1062.) Critical here, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)  And "[t]he only means . . . by which a moving defendant can satisfy [this] requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e)." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66.)  Thus, "in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, at p. 1063.)

Applying the elements test here, the Dahans have asserted two causes of action:  fraud and breach of fiduciary duty.  To plead the elements of these claims, they alleged the Siag parties (1) induced them to rely on Dany as a financial advisor when his intent was to defraud them, and (2) agreed to split the profits equally from their business venture, but instead wrongfully diverted $455,500 from the venture to a company owned by Dany and secretly recorded fraudulent deeds of trust in favor of that company.  A

9

careful review of the cross-complaint demonstrates that none of these alleged wrongful acts involve a "written or oral statement or writing" made by Dany "before" or "in connection with" judicial proceedings. (§ 425.16, subd. (e)(1) & (2).) Liability, if found by the trier of fact, will therefore arise from fraudulent statements made during the parties' business dealings or a fraudulent transfer of funds and encumbrance of real property, *not* protected activity in the form of actions taken or statements made by Dany or others during other litigation. (Compare *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 [holding the plaintiff was properly subject to an anti-SLAPP motion because he was sued based on "affirmative counterclaims he filed in federal court"].) The Siag parties have therefore failed to make a prima facie case that the causes of action for fraud and breach of fiduciary duty in the cross-complaint are founded on statements or conduct protected by the anti-SLAPP statute.

The Siag parties have failed to make a prima facie showing because they do not distinguish between "(1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity." (*Graffiti Protective Coatings*, *supra*, 181 Cal.App.4th at pp. 1214–1215.) The allegations that Dany was involved in other litigation have not been used to assert claims against them. The cross-complaint asserts that Dany has engaged in a pattern and practice of "*the same type*" of wrongful conduct as allegedly committed against the Dahans; it does not allege that Dany's statements or activity in the other lawsuits caused harm to the Dahans. (Italics added.) The cross-complaint thus relies on the allegations about other litigation to provide context and evidentiary background for the asserted causes of action, not as a basis—independent or otherwise—for claiming liability. "Allegations of protected activity that

10

merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra,* 1 Cal.5th at p. 394; see generally *Graffiti Protective Coatings,* at pp. 1218–1222 [collecting cases where speech or petitioning activity alleged in a complaint "serves solely as evidence in proving liability—which is not subject to the anti-SLAPP statute" as opposed to "speech or petitioning activity that *is* the basis of liability—to which the anti-SLAPP statute applies"].)

The Siag parties' remaining contentions also lack merit. They contend the cross-complaint is subject to anti-SLAPP scrutiny because evidence of Dany's prior litigation history, if used at trial, will be inadmissible pursuant to Evidence Code section 1101. Evidence Code section 1101 provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Relying on this authority, the Siag parties contend it would be improper to admit evidence at trial that Dany engaged in the same type of wrongful conduct on previous occasions for the purpose of arguing he has the propensity to engage in such conduct. According to their logic, because this evidence will be inadmissible at trial, the cross-complaint is subject to the provisions of Code of Civil Procedure section 425.16.

In a similar vein, the Siag parties contend the cross-complaint is subject to anti-SLAPP scrutiny because statements made by Dany in other lawsuits are privileged. Statements made during judicial proceedings are generally privileged pursuant to Civil Code section 47, subdivision (b). Subject to specific listed exceptions, that code section provides "[a] privileged publication or broadcast is one made:  [¶ . . .¶] [i]n any . . . judicial

11

proceeding." (Civ. Code, § 47, subd. (b).) The civil litigation privilege is an affirmative defense. (*Beroiz v. Wahl* (2000) 84 Cal.App.4th 485, 492.) It " 'bars all tort causes of action except a claim of malicious prosecution.' " (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322 (*Flatley*).) Based on this authority, the Siag parties contend Code of Civil Procedure section 425.16 applies to the fraud and breach of fiduciary causes of action because "the litigation privilege provides an absolute defense" to both causes of action. (Capitalization and boldface omitted.)

Neither of these contentions correctly applies the elements test to determine whether the causes of action asserted in the cross-complaint are founded on activity protected by section 425.16. As noted, when deciding whether a cause of action is protected within the meaning of section 425.16, courts "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra,* 2 Cal.5th at p. 1063.) Courts do not consider whether evidence supporting allegations made in support of the complaint will be admissible at trial. Nor do they consider a defendant's affirmative defenses. As we have explained, the fraud and breach of fiduciary duty causes of action here are not based on any statements made in other lawsuits, privileged or otherwise.[4]

---

[4]    We acknowledge that courts "have looked to the litigation privilege *as an aid* in construing the scope of section 425.16, subdivision (e)(1) and (2) with respect to the first step of the two-step anti-SLAPP inquiry." (*Flatley, supra,* 39 Cal.4th at pp. 322–323, italics added.) But this analytical use of the litigation privilege does not apply here. This is because, again, the fraud and breach of fiduciary duty causes of action in the instant case are not based on any statements made in other lawsuits.

For the first time on appeal, the Siag parties contend the discussions Dany had with the Dahans that led to the purchase of real property *independently* constitute protected speech within the meaning of section 425.16.  They cite to the provision in the California Constitution that provides "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right." (Cal. Const., art. I, § 2, subd. (a).)  We briefly address this contention despite the Siag parties' failure to raise it in the trial court.

It goes without saying our state and federal constitutions both broadly protect the freedoms of speech and association amongst individuals.  But this does not mean all speech protected by the state and federal constitutions is *protected activity* within the meaning of section 425.16.  The two are not coextensive.  To the contrary, pursuant to the plain language of section 425.16, subdivision (e), a cause of action is subject to a special motion to strike only if it arises from an " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue.' "  The statements made by the parties here while negotiating their real estate venture patently do not fit into any of the four categories of speech subject to special protection.  Such statements are not ones alleged to have been made "before" or "in connection with" a "legislative, executive, or judicial proceeding"; nor were they made in a "public forum"; nor do they involve "an issue of public interest."  (§ 425.16, subd. (e).)

Finally, the Siag parties raise a host of objections to alleged pleading defects in the cross-complaint and failures of proof they expect will occur if the case goes to trial.  The procedures to address such contentions are by way of demurrer and motion for summary judgment, not a special motion to

13

strike. (§§ 430.10, 437c.) We accordingly do not discuss or resolve any such contentions here.

In summary, we conclude the trial court correctly ruled the Siag parties failed to meet their threshold burden. They failed to demonstrate the causes of action in the cross-complaint are based on any statement, writing, or conduct by them in furtherance of their right to free speech or to petition the government for redress of grievances. The Dahans are therefore not required to demonstrate a probability of prevailing on the merits at this pleading stage of the underlying lawsuit. "[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability." (*Park, supra,* 2 Cal.5th at p. 1060.)

DISPOSITION

The trial court's order denying cross-defendants' special motion to strike is affirmed. Cross-complainants are awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


RUBIN, J.

14